William E. HARDER, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 91–427.

United States Court of Veterans Appeals.

June 2, 1993.

William E. Harder, pro se.

James A. Endicott, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Angela Foehl, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

IVERS, Associate Judge:

William E. Harder appeals from a November 19, 1990, Board of Veterans' Appeals (BVA or Board) decision denying service connection for a right knee disorder. The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). The Court finds that the Board's decision is clearly erroneous. Accordingly, we reverse and vacate the decision of the BVA and remand the case for readjudication consistent with this opinion.

## FACTUAL BACKGROUND

Appellant served in the United States Army from September 15, 1953, to July 8, 1955. R. at 1. In 1948, prior to his enlistment, appellant had injured his left and right knees while playing football. R. at 6. Appellant's preinduction examination noted that appellant's right knee was "abnormal" but was "within normal limits as to function and stability and size." R. at 2. Otherwise, appellant was considered medically fit for duty with no limitations listed. R. at 2–3.

On November 9, 1953, while in the service, appellant's left knee locked while he was squatting. R. at 13. This injury resulted in "[i]nternal derangement, left knee," requiring orthopedic surgery. R. at 4. On November 27, 1953, appellant underwent surgery on the left knee to repair the tear of his left medial meniscus (crescent-shaped layer of fibrocartilage bordering and partly covering the articulating surfaces of the tibia and femur at the knee, WEBSTER'S MEDICAL DICTIONARY 422 (1986)).

R. at 14, 23. Clinical records indicate that appellant also had an "[i]nternal derangement, right knee; football injury, 1952." R. at 14. On January 15, 1954, appellant fell again and reinjured his left knee. R. at 35. On January 18, 1954, an Army physician gave appellant a physical profile which prevented him from marching, kneeling, or stooping, or participating in physical training. R. at 31.

On February 1, 1954, appellant was diagnosed with moderate synovitis ("inflammation of a synovial membrane usually with pain and swelling of the joint," WEBSTER'S MEDICAL DICTIONARY 699) of the left knee. From February 1, 1954, through March 22, 1954, appellant received additional, continuing treatment for effusion of the left knee. R. at 44–45, 47–51. On March 19, 1954, appellant underwent surgery again on his left knee to remove the entire lateral cartilage. R. at 35, 53. According to May 28, 1954, clinical records, the surgical treatment resulted in an infection of the left knee wound. R. at 35.

An October 4, 1954, physical condition report stated that appellant had traumatic arthritis without specifying which knee was affected. R. at 74. Additional examinations on March 1, 1955 (R. at 75), July 6, 1955 (R. at 76), September 7, 1955 (R. at 83–84), September 9, 1955 (R. at 85–86), and October 3, 1955 (R. at 88), revealed a continuing disorder in appellant's left knee.

Several examinations also noted problems in appellant's right knee. A July 6, 1955, examination gave a diagnosis of "[t]raumatic arthritis, mild, left knee" and "[p]ossible osteochondrotic loose body" in appellant's right knee. R. at 76. On September 7, 1955, appellant was again diagnosed as having a "loose body" in his right knee joint. R. at 84, 86, 88. However, a September 9, 1955, radiographic report stated that certain observed irregularities in appellant's right knee were "not very convincing for a defect such as that from osteochondritis dissecans. The bones on the right[ ] otherwise appear to be normal." R. at 85.

On July 18, 1955, appellant filed a claim with a Veterans' Administration (now De-

partment of Veterans Affairs) (VA) regional office (RO). R. at 89. On October 17, 1955, the RO granted service connection for appellant's left knee condition, rated as 10% disabling, but denied service connection for his right knee condition. R. at 90. Appellant apparently did not appeal this decision, and the decision thus became final.

Many years after the October 1955 rating decision, appellant continued to receive treatment for his left knee and right knee conditions. On September 29, 1972, X-rays of both knees revealed a "small joint effusion on the right [knee]" and a "larger joint effusion" on the left knee. R. at 94. The radiologist reported finding "rather marked hypertrophic changes for a patient of this age on the left side." *Ibid.* An April 12, 1988, radiographic report stated:

> There are very advanced degenerative changes of both knees especially considering the age of 55 years. Especially the medial compartments of both knee joints and the patellofemoral joints are involved. There are large spurs and the joint spaces are narrow.

R. at 158.

On May 4, 1988, when appellant applied to an RO for an increase in the disability rating for his left knee condition and sought service connection for his right knee condition, he wrote:

> [Left] [k]nee increasingly became less mobile and flexible and suffered loss of range of motion. As this progressive deterioration occurred, it increased disproportionately the use of right leg as a compensating factor. Right knee experienced problems about 1960 and those progressively got worse....
>
> It is clear to me that what started as a problem with my left knee has now caused a problem with the right knee also and in combination they present a very serious debilitation.

R. at 95–96.

Appellant also submitted a treating physician's statement that his left knee condition had caused the problems in his right knee as well as his own statements recounting similar statements made by the

physician directly to him. In a June 15, 1988, letter to the RO, appellant described a visit to the Minneapolis VA Medical Center, where he was seen by Dr. Raymond Bonnabeau, Jr. (R. at 101). According to appellant, Dr. Bonnabeau stated that the arthritic condition in the appellant's right knee "was a result of the disability [he] had suffered to [his] left knee while in the armed services." *Ibid.* A July 11, 1988, diagnosis by Dr. Bonnabeau found "[t]raumatic injury to the left knee with internal derangement, operated three times (with removal of semilunar cartilage), with subsequent development of severe traumatic arthritis with residual." R. at 108. On August 19, 1988, the RO increased to 20 percent the disability rating for the left knee condition; however, the RO did not reopen the claim for the right knee condition because appellant had not submitted new and material evidence. R. at 112.

In response, appellant wrote a letter to the RO on November 10, 1988, in which he stated:

> Quite obviously, and in conformance with what I have been told by your own attending physician, Doctor Bonnabeau, the problems with my right knee occurred, over time, by reason of the deterioration of my left knee[,] which was a service[-]connected disability and the attendant traumatic arthritis which impacted that knee and therefore, unduly stressed, aggravated and deleteriously undermined my right knee.

R. at 116. On November 28, 1988, appellant wrote another letter, in which he stated:

> [C]learly the basis for the claim with regard to the right knee arises by reason of the constantly deteriorating condition of the left knee[,] which was service connected and was immediately beset by traumatic arthritis after having been treated by United States Army doctors. The medical records clearly reflect no arthritic or other debilitating problem with the right knee at any time during my military service period.

R. at 119. On February 1, 1989, the RO requested that appellant "submit a medical

statement from a doctor showing that [the] current right knee condition is the result of over compensation for [the] service-connected left knee condition." R. at 124. Appellant responded with a February 20, 1989, letter, reiterating that Dr. Bonnabeau had twice stated that he had "reported in his medical notes that the arthritic condition of [the] right knee was caused by the compensable disability in the left knee and the stress placed on the right knee over a protracted period of time by reason thereof." R. at 126–27.

On April 11, 1989, the RO wrote to appellant that VA had found the June 15, 1988, progress notes in which Dr. Bonnabeau wrote, " '[R]right knee bad secondary to service[-]connected left knee.' " R. at 130. However, the RO also stated: "At this point, we view this statement as medical opinion, and not direct medical evidence." *Ibid.*

In progress notes dated April 17, 1989, Dr. Bonnabeau gave a diagnosis:

Severe arthritis both knees. Very advanced.... [Left] knee injury [service-connected]. Has severe arthritis [right] knee. Secondary to initial [left] knee injury, supported by X-ray. Any damage pre[-]service aggravated in [service] and by [service-connected] injury. May eventually need bilateral knee replacements.

R. at 128. On April 20, 1989, appellant wrote to the RO again, reprising his examination of April 17, 1989, and his conversation with Dr. Bonnabeau that same day. R. at 133. Appellant stated:

[On April 17, 1989,] I showed [Dr. Bonnabeau] your April 11 letter, and I believe he was as dumbfounded by your observations as I was. He has once again medically examined me, and as of that date entered into my medical records his medical opinion concerning the direct causation of my right knee condition to the trauma occasioned to my left knee while in the United States Army service.

*Ibid.*

A May 30, 1989, rating decision, apparently rejecting Dr. Bonnabeau's diagnosis regarding causation, stated: "This statement is, at best, pure speculation and does not provide any reasonable factual basis for a change in our prior denials of service connection." R. at 138.

On June 22, 1989, a radiographic report from a private medical center describing a new set of X-rays of appellant's knees stated:

Right knee: There is marked narrowing of the medial joint space with hypertrophic spurring. There is also narrowing of the patellofemoral joint space with spurring. When compared to previous study from 2/87, there has been further progression and narrowing of the patellofemoral joint space.

Left knee: There is severe narrowing of the medial joint space with mild narrowing of the lateral joint space. There is marked hypertrophic spurring present. There is also narrowing in the patellofemoral joint space with extensive spurring present. When compared to the previous study from 2/87, there has been further loss in the medial joint space.

R. at 140.

In its November 19, 1990, decision, in light of the various arguments made by both appellant and his service representative, the Board considered appellant's claim as both a reopened claim for direct service connection of the right knee condition and as an original claim for secondary service connection. *William E. Harder,* BVA 90–____, at 4 (Nov. 19, 1990). Upon reviewing the evidence, the Board continued the denial of service connection for the right knee disorder. *Harder,* BVA 90–____, at 7.

## ANALYSIS

The Board's November 19, 1990, decision presents two issues arising from the same right knee disorder: whether appellant submitted new and material evidence to reopen the October 1955 decision denying direct service connection; and whether the Board's November 1990 decision denying secondary service connection was clearly erroneous.

### A. *Direct Service Connection*

Despite his protests to the contrary, appellant's statements indicate that he wished

to reopen a claim. In a brief filed with the BVA prior to its November 1990 decision, appellant stated that he was not seeking direct service connection but that he was presenting new and material evidence to reopen his claim on the basis that the right knee disability was proximately due to the service-connected left knee condition. R. at 167. In his brief to the Court, appellant argues for direct service connection when he states:

> [T]hough there was no radiographic evidence at the time of [appellant's] discharge from the service as to the right knee arthritic condition, the very nature of the progressive disease, being as it was secondary to the left knee disability, would have had to have commenced in some degree during that latter period of the [a]ppellant's military service after he incurred the service-connected left knee disability.

Br. at 10–11. The Board addressed the issue whether appellant had presented new and material evidence to reopen his claim. Consequently, we address this issue as well.

 Appellant's claim for direct service connection for the right knee disorder was denied by a final decision of the BVA in October 1955. Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary of Veterans Affairs must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski*, 1 Vet. App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is "relevant and probative" and where there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Ibid.*

Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992).

 The Court holds that appellant did not present new and material evidence to reopen his claim for direct service connection. Appellant's and Dr. Bonnabeau's statements all relate to diagnoses in 1988 and after, and are certainly "new." However, the evidence is not "material." Although many of these statements concern the causal effect of the left knee condition on the right knee condition, they do not demonstrate that the right knee condition was incurred in or aggravated during service or within one year after separation from service. *See* 38 U.S.C.A. §§ 1110, 1112(a)(1) (West 1991); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (1992). The Court therefore affirms the BVA's decision regarding the newness and materiality of appellant's evidence.

### B. *Secondary Service Connection*

Appellant's primary argument has been that he is entitled to secondary service connection for the right knee condition. Since this is a new claim, the Board's findings and determination are subject to the "clearly erroneous" standard of review. *See* 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Court holds that the Board's denial of secondary service connection is clearly erroneous.

Appellant's evidence in support of service connection included his recounting of Dr. Bonnabeau's statements directly to him and Dr. Bonnabeau's own statements and reports. R. at 116, 118, 126–28, 130.

 Under 38 C.F.R. § 3.310(a) (1992), secondary service connection is available for a disability

> which is proximately due to or the result of a service-connected disease or injury.... When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

The Board rejected statements by Dr. Bonnabeau regarding the causal relationship between the service-connected left knee condition and the right knee condition. However, much of the Board's reasoning is speculative and has no independent basis in the record. *See Colvin*, 1 Vet.App. at 175 ("BVA panels may consider only independent medical evidence to support their findings.... [H]aving reached a contrary conclusion, it was necessary for the panel to state its reasons for doing so and, more importantly, point to a medical basis other than the panel's own unsubstantiated opinion which supported the decision."); *Paller v. Principi*, 3 Vet.App. 535, 538–39 (1992). The requirement that the Board point to independent medical evidence flows from 38 U.S.C.A. § 7104(d)(1) (West 1991), which directs that the Board provide adequate reasons or bases for its findings and conclusions. *See Murphy v. Derwinski*, 1 Vet. App. 78, 81 (1990) (citing *Gilbert*, 1 Vet. App. at 57). This Court recently rejected the broad application of the "treating physician rule" that gives the opinions of treating physicians greater weight in evaluating veterans' claims. *Guerrieri v. Brown*, 4 Vet.App. 467, 471 (1993). Here, however, the Board gave Dr. Bonnabeau's diagnoses lesser weight in the face of *no* contrary evidence. *See also Smith v. Derwinski*, 2 Vet.App. 137, 141 (1992) (BVA may not ignore or disregard opinions of treating physicians); *Gleicher v. Derwinski*, 2 Vet. App. 26, 29 (1991) (BVA may not ignore or disregard medical conclusions of examining physicians); *Hanson v. Derwinski*, 1 Vet. App. 512, 516 (1991) (same); *Caldwell v. Derwinski*, 1 Vet.App. 466, 470 (1991) (same). In place of the medical opinion of appellant's treating VA physician, the Board substituted its own factually and analytically erroneous interpretation of the record and cited no evidence from the record, no medical treatises, and no independent medical opinions in support of its conclusion.

On February 1, 1989, the RO specifically requested that appellant "submit a medical statement from a doctor showing that [the] current right knee condition is the result of over compensation for [the] service-connected left knee condition." R. at 124. However, the RO rejected just such a medical statement by Dr. Bonnabeau because it viewed "this statement as medical opinion, and not direct medical evidence." R. at 130. In its November 1990 decision, the BVA also rejected Dr. Bonnabeau's statements regarding causation. *Harder*, BVA 90–____, at 5. The RO's and the Board's statements regarding Dr. Bonnabeau's diagnoses and appellant's statements ignore VA's regulation regarding evidence of service connection. *See* 38 C.F.R. § 3.303(a) (1992) (service connection determinations shall be based on entire evidence of record, including "medical records and all pertinent medical and lay statements.") "Nowhere do VA regulations provide that a veteran must establish service connection through medical records alone." *Cartright v. Derwinski*, 2 Vet.App. 24, 25 (1991); *see also Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992) (witness with medical knowledge might provide probative evidence as to causation of a condition in certain instances). Because Dr. Bonnabeau has treated appellant for several years, has been privy to radiographic reports, and has been responsible for making diagnoses and treatment plans for appellant, he is in a position to opine on the cause of appellant's right knee condition.

In rejecting Dr. Bonnabeau's diagnoses, the Board relied in part on a faulty analysis of the record. The Board stated: "While we have no doubt about the sincerity of the veteran, we are also mindful that statements of medical history as to remote events are of inherently much lesser probative value than contemporaneous clinical records." *Harder*, BVA 90–____, at 6. Appellant contends that his condition arose after service and has continued during Dr. Bonnabeau's treatment. Therefore, Dr. Bonnabeau's statements do not relate to a remote event that is outside the scope of his treatment and knowledge. Just as Dr. Bonnabeau's diagnoses in 1988 and 1989 did not establish a new factual basis for direct service connection, the service medical records and other records relied upon by the Board have no bearing on Dr. Bon-

nabeau's diagnoses regarding secondary service connection.

■ The Board's analysis of the medical evidence is also clearly erroneous. Commenting on appellant's theory of causation, the Board observed:

> Where a disorder of one lower extremity proximately causes disability in the opposite extremity, there ordinarily are distinctly different degrees of radiographic changes. In other words, if the theory of causation advanced by the veteran and expressed by the VA physician were correct, we would reasonably expect to see lesser changes on the right than the left. The radiographic interpretations of record describe extensive bilateral changes, with no indication of any substantial differences. It follows that this objective evidence points to the conclusion that there is no direct causal relationship between the two knee disorders.

*Harder*, BVA 90–____, at 6. However, the medical records conflict with the Board's evaluation. A September 29, 1972, radiographic report indicated "minimal hypertrophic changes involving all three compartments" of the right knee with "a small joint effusion." R. at 94. However, the left knee presented "a larger joint effusion" with "[r]ather marked hypertrophic changes for a patient of this age on the left side." *Ibid.* In addition, the June 22, 1989, radiographic report also revealed differences of degree in the respective deterioration of the left and right knees. R. at 142. The report noted *"marked* narrowing of the medial joint space with hypertrophic spurring" and "narrowing of the patellofemoral joint space with spurring" on the right knee. *Ibid.* (emphasis added). By contrast, the report noted that the left knee exhibited *"severe* narrowing of the medial joint space with *mild narrowing of the lateral joint space"* accompanied by *"marked* hypertrophic spurring" and "narrowing in the patellofemoral joint surface with *extensive* spurring present." *Ibid.* (emphasis added). These two radiographic reports demonstrate that the right knee has exhibited different, lesser degrees of deterioration than the left knee. Thus, the Board's finding that the "radiographic interpretations of record describe extensive bilateral changes, with no indication of any substantial differences," *Harder*, BVA 90–____, at 6, is clearly erroneous. On the contrary, as the reports excerpted above demonstrate, appellant has a history of progressive changes in both knees with different degrees of deterioration.

In addition, although appellant's statements recounting what Dr. Bonnabeau told him about his condition's cause may not be sufficient to establish service connection, they do add to Dr. Bonnabeau's own statements supporting service connection. In fact, the Board apparently believed that appellant was sincere in his claim. *Harder*, BVA 90–____, at .6. Taken together, the sum total of all this credible evidence dictated one result: granting service connection.

After a review of the record, we conclude that there is no plausible basis for the BVA's decision. "[B]ecause there is no evidence to support the BVA determination, it is obvious that a mistake has been committed, the finding is not plausible, there can be only one permissible view of the evidence, and, thus, the finding is clearly erroneous." *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991); *see also Caldwell*, 1·Vet.App. at 470 (reversing clearly erroneous BVA decision). Appellant's right knee condition merits secondary service connection. Therefore, we reverse the BVA's November 19, 1990, decision. On remand, the only matter before the Board will be the assignment of an appropriate disability rating on the basis of all the evidence including a contemporaneous medical examination to determine the extent of appellant's right knee condition. *See Green (Victor) v. Derwinski*, 1 Vet.App. 121, 124 (1991).

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the November 19, 1990, decision of the BVA with respect to the newness and materiality of appellant's evidence, but REVERSES and REMANDS the case for assignment of an appropriate disability rat-

ing for appellant's secondarily service-connected right knee condition.