Edgar E. TRAUT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–419.

United States Court of Veterans Appeals.

June 2, 1994.

Rick Surratt, non-attorney practitioner, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and John C. Winkfield, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

FARLEY, Judge:

Appellant, veteran Edgar E. Traut, appeals from a February 17, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied him entitlement to service connection for multiple sclerosis. In balancing the evidence, the Board found the absence of objective evidence documenting multiple sclerosis during service or within the seven-year presumption period following service more persuasive than evidence favorable to appellant's claim. Appellant, in his brief, urges reversal. The Secretary filed a motion for remand based on three reasons:

the Board's failure to fulfill its duty to assist in developing the record, the reliance of the Board on extra-record medical treatises, and the Secretary's belief that the evidence presents a "medically complex factual scenario" requiring further medical evaluation. Appellant opposes the Secretary's motion for remand to the Board. On consideration of the record on appeal and the pleadings filed by the parties, the Court will reverse the decision of the Board.

## I.

Appellant served in the armed forces of the United States from April 30, 1953, to April 9, 1955. R. at 15. His service medical records document hospitalizations during service. *See* R. at 18–27. The progress notes associated with appellant's hospitalizations in November and December 1954 state that he had been ill about ten days prior to admission with "anorexia, weakness, chills & sweats & stiffness, slight headache & generalized aches & pains along [with] palpitations of the heart especially when lying down and dizziness on standing. Aching was mostly muscular," and appellant "continue[d] to complain of weakness, sharp shooting precordial pain & palpitations" without murmurs. R. at 20–22. During that hospitalization it was noted that appellant had "a little visual difficulty while reading" and "pain below shoulder blades & at lower end of sternum, knife[-]like severe, fleeting." R. at 20. Anemia was also found "probably due to G.I. bleeding from ulcer disease." R. at 22–23. The report of appellant's April 8, 1955, physical examination for release to the Army reserves notes no physical, psychiatric, or neurologic defects. R. at 28.

Medical records of Dr. V.E. Neils document that on June 19, 1961, appellant requested a physical examination due to "[s]oreness and blueness of finger nails. Has [occasional] pain, quite severe between shoulder blades." R. at 31. Dr. Neils' records indicate that he continued to treat appellant at least until December 1990, and contain, *inter alia*, a diagnosis of rheumatoid arthritis in April 1969, complaints of numbness since February 1974, and referral to the Mayo clinic in 1975; Dr. Neils' initial reference to a multiple sclerosis diagnosis appeared in September 1980. R. at 31–37. In a January 2, 1975, consultation record from the St. Cloud Hospital, Dr. V.R. Zarling noted appellant had been experiencing numbness since September 1974, with decreased feeling in both legs and trouble walking since December 1974; Dr. Zarling's impression was that appellant had "peripheral neuropathy [of the] upper and lower extremities, etiology unknown." R. at 40.

Appellant apparently first received a definitive diagnosis of multiple sclerosis in November 1975 from Drs. James F. Richards and Robert Dinapoli of the Mayo Clinic. R. at 44–46. At that time, Dr. Richards noted that appellant's history dated back to an episode when he had experienced pain, blurring, and some diplopia in his eyes in 1967 or 1968. Dr. Richards stated, "It is our impression that [appellant] certainly has multiple sclerosis which explains the rather exacerbating and remitting nature of his illness.... It is quite possible that his episode back in the late sixties concerning his eye was an episode of optic neuritis." R. at 44–45. Dr. Robert Koenig, a doctor of ophthalmology, wrote in a March 1991 letter:

I saw [appellant] according to my records ... on November 22, 27th of 1963.

When he first came in on November 22, he complained of [temporary] blurring of his right eye and some feeling of pain behind the right eye on turning the globe. The examination didn't show any diplopia or blurred vision ... at that time.

I did see him subsequently on another occasion because I found the ocular tensions to be somewhat higher in the right eye, measuring 24 and in the left eye 17, but when I repeated the test on the 27th he not only had no symptoms of any kind, the pressures were 17 and 15.

R. at 83.

In April 1991 appellant filed with the VA an application for compensation and pension seeking service connection for his multiple sclerosis. R. at 86. In his application appellant stated he "had spent approximately two months in the hospital [during service;] they didn't know what was casuing [sic] my problems.... I have always had a problem since

the time in service.... [I]n 1963 I ... had blurred vision[;] this even happened while in service." R. at 87. At the time, the evidence before the VA regional office (RO) included that discussed *supra*, and other documents pertaining to appellant's treatment for multiple sclerosis in the late 1970s and early 1980s at St. Cloud Hospital. *See* R. at 55–80. On May 22, 1991, the RO denied appellant's claim, finding that the evidence failed to indicate that his multiple sclerosis had manifested to a compensable degree during service or within the seven-year presumption period following service. R. at 92.

In July 1991 Dr. Neils submitted a letter indicating that it was his "impression that [appellant] had Multiple Sclerosis when he was first seen June 19, 1961 with rather vague symptoms which gradually progressed so that a diagnosis could be made in 1975." R. at 94. Thereafter, the RO continued the denial of appellant's claim in an October 1991 confirmed rating decision. R. at 97. Appellant filed a Notice of Disagreement in November 1991, and a VA Form 1–9 in March 1992. R. at 99, 115–16. Dr. Stewart Ellis, a doctor of veterinary medicine who had worked with appellant from 1953 until retiring in 1990, submitted a letter dated December 30, 1991, which, in pertinent part, related:

> On or about 1957 I recall noticing that [appellant] had a problem with his hands and arms when he was helping me restrain animals. He complained of numbness of the hands, with a tingling feeling, temporary lack of control and an inability to hold a rope or animal for any length of time. His hands would often turn blue with little strength when he tried to help over a period of time.

> Over the years I encouraged him to seek medical help. I tried to get him to go [to] the Mayo Clinic in Rochester. His condition gradually worsened over the years and I continued to encourage him to go to Rochester but to little avail....

> As his condition gradually progressed affecting other parts of his body, he did finally contact a chiropractor. His wife eventually got him to go to Dr. Niels [sic]....

R. at 108. Dr. Kenneth D. Larson, M.D., of the St. Cloud Hospital also submitted a letter, dated March 11, 1992, which stated:

> In addition to the history from [appellant] and his wife I have also reviewed letters from Dr. Vernon Neils, Dr. Robert Koenig and for me a highly pertinent letter from Dr. Stewart Ellis a Doctor of Veterinarian Medicine who essentially confirms the history of numbness of the hands with tingling, lack of control, and decreased grip potential dating back to 1957.

> Based on the above history and review it is my opinion that the first definite signs of demyelinating disease in [appellant] should be appropriately dated to 1957 for purposes of the Veterans Affairs Rating Board.

R. at 111–12. An April 1992 RO confirmed rating decision considered these two letters, but continued the denial of appellant's claim. R. at 118–19. The Board denied appellant's claim for service connection for multiple sclerosis on February 17, 1993, on a finding that the negative·evidence preponderated against his claim, but without articulating what negative evidence formed the basis for this conclusion. *See* R. at 5, 9.

## II.

It is undisputed that appellant currently suffers from multiple sclerosis. The only question is whether he manifested multiple sclerosis during service or to a degree of 10% or more within the seven-year presumption period following service. Multiple sclerosis, when manifest during service or to a degree of 10% or more within the seven-year presumption period following service, "shall be considered to have been incurred in or aggravated by such service." 38 U.S.C. § 1112(a)(4); *see also* 38 U.S.C. § 1110; 38 C.F.R. § 3.307(a)(3). In its decision, the Board utilized two medical treatises to define multiple sclerosis and to state that its "initial signs and symptoms include weakness, numbness, tingling, or unsteadiness in a limb; spastic paraparesis; retrobulbar neuritis; diplopia; disequilibrium; or a sphincter disturbance, such as urinary urgency or hesitation." R. at 7 (quoting MICHAEL J. AMINOFF, M.D., CURRENT MEDICAL DIAGNOSIS &

TREATMENT 752 (Steven A. Schroeder et al., eds., 1992); citing CHARLES M. POSER ET AL., MERRITT'S TEXTBOOK OF NEUROLOGY 593 (Lewis P. Rowland, M.D., ed., 7th ed. 1984)). Although apparently used only to define multiple sclerosis and as introductory material, these two medical treatises represent the *only* independent medical evidence of record pertaining to multiple sclerosis. Thus, it is unclear whether these treatises are the negative evidence to which the Board referred in denying appellant's claim. If so, the Board erred under *Thurber v. Brown,* 5 Vet.App. 119 (1993), since there is no indication that the Board gave appellant notice of and a reasonable opportunity to respond to the treatises. In the alternative, if used merely for definitions, the treatises actually appear to *support* appellant's claim, in view of appellant's in-service hospitalization records documenting weakness, dizziness, and visual difficulties.

■ Absent from the Board's analysis is any comparison of appellant's complaints of painful shoulder blades during the in-service hospitalization and his subsequent identical complaints in 1961. Nor did the Board address appellant's complaints of weakness, dizziness while standing, and visual difficulties while reading during his in-service hospitalization. Instead, in an apparent attempt to discount appellant's evidence that he exhibited symptoms of multiple sclerosis during service or within the seven years following service, the Board stated:

> [D]uring service appellant was hospitalized for 54 days with anemia. *From the service medical records it is apparent that there were no neurological problems.*

R. at 8 (emphasis added). The Board failed to rely on any evidence other than its own unsubstantiated opinion that appellant's in-service hospitalization was devoid of any neurological problems. Similarly, in evaluating appellant's 1961 visit to Dr. Neils, the Board concluded:

> [Appellant] was examined and treated by Dr. Neils in 1961 complaining of blue and sore fingernails and occasional pain between the shoulder blades. *These complaints are not symptomatic of multiple sclerosis.*

R. at 9 (emphasis added). By implication, this conclusion contradicts Dr. Neils' 1991 opinion that appellant had multiple sclerosis when Dr. Neils first treated him in 1961 for sore, blue fingernails and pain between the shoulder blades. "The Board may not simply reject the medical opinions given, equivocal though they may be, by using its own medical judgment." *Obert v. Brown,* 5 Vet. App. 30, 33 (1993); *see also Talley v. Brown,* 6 Vet.App. 72, 74 (1993). Whether appellant's sore, blue fingernails and pain between the shoulder blades, as treated by Dr. Neils in 1961, were symptomatic of multiple sclerosis is a purely medical conclusion which the Board cannot reach in the absence of supporting independent medical evidence. Thus, here the Board either relied on its own unsubstantiated medical conclusions or failed to provide the notice requirements mandated by *Thurber* if the Board was relying on the medical treatises discussed *supra* ; either would constitute error. *See Harder v. Brown,* 5 Vet.App. 183, 188 (1993); *see also* 38 U.S.C. § 7104(d)(1); *Thurber,* 5 Vet.App. at 126. However, there is an even more fundamental problem with the BVA decision: it is not supported by the evidence of record.

### III.

■ "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990); *see also* 38 U.S.C. § 7261(a)(4). However, when the record is devoid of any plausible basis for the factual determinations of the BVA, they must be overturned. *See Harder,* 5 Vet.App. at 189; *Hanson v. Derwinski,* 1 Vet.App. 512, 518–19 (1991); *Willis v. Derwinski,* 1 Vet.App. 66, 70 (1991). Here, the Board concluded that "in the medical records, there is no evidence of any complaints indicative of multiple sclerosis until at least 1966." R. at 9. This unsupported conclusion cannot stand in light of the evidence presented by appellant, Dr. Ellis, Dr. Neils, and Dr. Larson, and the complete absence of any evidence to the contrary. The Board was clearly erroneous in

discrediting the opinions of appellant's physicians and substituting its own unsubstantiated medical conclusions for those of appellant's physicians. *See Harder,* 5 Vet.App. at 188. The only plausible conclusion which can be drawn from the probative evidence of record is that appellant had multiple sclerosis prior to the end of the seven-year presumption period following service.

The Board appears to have relied principally on the fact that certain evidence was submitted after the appellant filed his claim not only to accord less credibility and probative value to that evidence, but also to discredit the highly probative first-hand statement of Dr. Ellis that appellant experienced numbness, tingling, and loss of grip and control as early as 1957. *See* R. at 8–9. The Board's error in this regard was magnified in a domino effect when it weighed the credibility of Dr. Larson's statement, which relied in part on the statement of Dr. Ellis. Dr. Larson, who had treated appellant since 1979, reviewed Dr. Ellis' observations of appellant's numbness, loss of grip and control, and blueness of the hands after use in 1957, and appellant's other medical records and history, and concluded that "the first definite signs of demyelinating disease in [appellant] should be appropriately dated to 1957." Other evidence to support appellant's claim includes the "impression" of Dr. Neils, a physician who had treated appellant since 1961, which stated that appellant had multiple sclerosis when first seen in June 1961. *See* R. at 94. To the extent that the Board relied on the two medical treatises as evidence against the claim, the treatises do not provide such adverse evidence. Rather, as noted above, the treatises refer to the initial signs of multiple sclerosis as including weakness, dizziness, and visual difficulties, a list which, when combined with the medical evidence supplied by Drs. Ellis and Larson, appears to support the claim. In any event, the treatises do not provide a plausible basis for the Board's decision.

One piece of record evidence that might appear to support the Board's conclusion is Dr. Neils' diagnosis that appellant had rheumatoid arthritis in April 1969. *See* R. at 31. Although this medical diagnosis might be related to some of appellant's symptoms, none of the physicians who provided medical evidence opined that the symptoms appellant exhibited within the presumption period, which Drs. Ellis and Larson attributed to multiple sclerosis, were related to rheumatoid arthritis rather than multiple sclerosis. Accordingly, the arthritis diagnosis could not have provided a plausible basis for the Board's decision.

Under 38 C.F.R. § 4.124a (1993) multiple sclerosis is rated under diagnostic code (DC) 8018. At all times relevant to appellant's claim, including the years 1955 to 1962 which comprise the seven years following appellant's service, DC 8018 carried a minimum rating of 30%. *See* 38 C.F.R. § 4.124a, DC 8018 (1993); 38 C.F.R. Appendix A to Part 4, § 4.124a (1993) (indicating all amendments made to the Schedule for Rating Disabilities since 1946, noting no changes to DC 8018, multiple sclerosis, minimum rating 30%). The note associated with DC 8018 stated at all times relevant:

> It is required for the minimum ratings for residuals under diagnostic codes 8000–8025, that there be ascertainable residuals. Determinations as to the presence of residuals not capable of objective verification, i.e., headaches, dizziness, fatigability, must be approached on the basis of the diagnosis recorded; subjective residuals will be accepted when consistent with the disease and not more likely attributable to other disease or no disease.

Dr. Ellis' testimony concerning appellant's afflictions in 1957, which included numbness, loss of grip, inability to hold a rope or animal for any length of time, and that appellant's hands would "turn blue with little strength," and the diagnoses and opinions of Drs. Larson and Neils that appellant had multiple sclerosis in 1957 and 1961, respectively, indicate that appellant had ascertainable residuals within the meaning of 38 C.F.R. § 4.124a, DC 8018 and its accompanying note during the seven years following his discharge from service. Thus, under the regulation, appellant met the physical requirements for the minimum rating of 30% for multiple sclerosis. It necessarily follows, therefore, that appellant manifested multiple sclerosis to a degree

of 10% or more during the seven-year presumption period following service.

In this instance, reversal, and not remand is appropriate. This case is distinguishable from *Talley*, 6 Vet.App. 72, in which the Court similarly considered whether a veteran's multiple sclerosis had manifested to a degree of 10% or more within the seven-year presumption period following service, and remanded to the Board after finding a breach of the duty to assist and an inadequate statement of reasons or bases for its findings and conclusions. *Id.* at 74–75. In *Talley*, the medical opinion of record was that "it was 'very *plausible* to recognize ... now as early symptoms of [ ] MS'" the early manifestations of blurred vision and vertigo which occurred within the presumption period. *Id.* at 73 (emphasis added). However, the record also contained evidence of a concussion during the presumption period which also could have explained the symptoms. *Id.* In the present case, the observations of Dr. Ellis in 1957 concerning numbness, tingling, and loss of control and grip; Dr. Neils' 1991 statement that appellant had multiple sclerosis when Dr. Neils saw him in 1961; and Dr. Larson's *definitive* statement, after considering appellant's history, that appellant had multiple sclerosis as early as 1957, exist in a record providing no plausible basis that these manifestations during the seven-year presumption period could have been caused by anything other than appellant's multiple sclerosis. Thus, this case is more like *Willis*, *supra*, in that all evidence and competent medical opinion of record support that appellant had multiple sclerosis within the seven-year presumption period following service. Consequently, the Court holds that the Board's conclusion was clearly erroneous and the decision denying service connection must be reversed. *See Harder*, 5 Vet.App. at 189; *Willis*, 1 Vet.App. at 70.

## IV.

Upon consideration of the record and the pleadings filed by the parties, the Secretary's motion for remand is DENIED, and the February 17, 1993, decision of the Board of Veterans' Appeals is REVERSED. This matter is REMANDED for prompt assignment of an appropriate rating.