Citation Nr: 1126157 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 06-03 439 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

1. Entitlement to a compensable rating for hypogammaglobulinemia.

2. Entitlement to service connection for peripheral neuropathy, to include as secondary to the service-connected hypogammaglobulinemia.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

A. Spector, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1964 to March 1968.

This case is before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which continued a noncompensable disability rating for hypogammaglobulinemia, and denied service connection for peripheral neuropathy. The Board notes that, while the Veteran filed his claim with the RO in St. Petersburg, Florida, the rating decision was issued by the Columbia, South Carolina RO. Thereafter, the Veteran was sent a December 2005 statement of the case by the RO in St. Petersburg, Florida.

The Veteran was afforded a Travel Board Hearing before the undersigned Veterans Law Judge in November 2008. A written transcript of this hearing was prepared and incorporated into the evidence of record.

In April 2009, the Board remanded the case for additional development. Regrettably, as outlined below, an additional remand is necessary before appellate review may proceed on this matter. 

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.



REMAND

A review of the record discloses further development is necessary prior to the adjudication of the Veteran's claim of service connection for peripheral neuropathy, and a claim for a compensable disability rating for hypogammaglobulinemia.

Although the Veteran was afforded a VA examination in April 2010 that included an etiological opinion discussing the Veteran's hypogammaglobulinemia, this opinion was incomplete. 38 C.F.R. § 4.20 (2010). The examiner noted that the Veteran was diagnosed with hypogammaglobulinemia in service. Additionally, he stated that the Veteran also had recurrent infections including sinusitis and bacteremia in service. Furthermore, the examiner noted that the Veteran currently experienced chronic sinusitis and recurrent bronchitis, and stated that these residuals were difficult to assess, as the Veteran had familial allergies; and, that in the Veteran's geographic area allergies and recurrent sinus infections were not uncommon. Lastly, the examiner stated that the Veteran had done exceedingly well for more than 40 years since service without any significant progression of the condition. 

However, this examination is of little probative value because the examiner did not give a clear opinion as to whether it was at least as likely as not that the Veteran's hypogammaglobulinemia was manifested by a chronic respiratory condition. Additionally, the examiner failed to state in detail, the current nature and severity of the Veteran's respiratory conditions, to include the number of incapacitating episodes, non-incapacitating episodes, medication prescribed, and any other symptoms associated with the condition. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (stating that once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided); Robinson v. Shinseki, 557 F.3d 1355 (2009); Combee v. Brown, 34 F.3d 1039 (1994). 

Without further clarification, the Board is without medical expertise to determine if the Veteran's service-connected hypogammaglobulinemia is manifested by any chronic respiratory conditions. Godfrey v. Brown, 7 Vet. App. 398 (1995); Traut v. Brown, 6 Vet. App. 495 (1994); Colvin v. Derwinski, 1 Vet. App. 171 (1991). The Board finds that a higher rating may be available by rating the Veteran's hypogammaglobulinemia as analogous to a respiratory disorder. As it remains unclear to the Board whether the Veteran's respiratory conditions are manifestations of hypogammaglobulinemia, a new VA examination and opinion is warranted. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Additionally, while the April 2010 VA examination also included an etiological opinion discussing the Veteran's peripheral neuropathy, this opinion was incomplete. 38 C.F.R. § 4.20 (2010). Upon examining the Veteran, the examiner diagnosed the Veteran with peripheral neuropathy, and stated that the etiology of the Veteran's peripheral neuropathy was uncertain. Furthermore, the examiner stated that there was no available test to determine the cause of this condition. He stated that there was an increase in peripheral neuropathy in monoclonal gammopathies, which the Veteran did not have. Additionally, the examiner stated that the Veteran had a history of alcohol use disorder, which may be the cause. However, the examiner then stated that he was checking the Veteran's B12, lead, mercury, and arsenic levels, and it was therefore a moot point. The examiner concluded that the Veteran's mild peripheral neuropathy remained of uncertain etiology. This examination is of little probative value because the examiner did not give a clear opinion as to whether it was at least as likely as not that the Veteran's peripheral neuropathy was proximately due to or aggravated by his service-connected hypogammaglobulinemia or any other in-service disease, event, or injury. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (stating that once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided); Robinson v. Shinseki, 557 F.3d 1355 (2009); Combee v. Brown, 34 F.3d 1039 (1994). 

Without further clarification, the Board is without medical expertise to determine if the Veteran's peripheral neuropathy is proximately due to or aggravated by any service-connected disability. Godfrey v. Brown, 7 Vet. App. 398 (1995); Traut v. Brown, 6 Vet. App. 495 (1994); Colvin v. Derwinski, 1 Vet. App. 171 (1991). As it remains unclear to the Board what the etiology of Veteran's peripheral neuropathy is with respect to his service, a new VA examination and opinion is warranted. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Lastly, the Board finds that a remand is also necessary to obtain any outstanding private treatment records with respect to the Veteran's claims. In a April 2009 statement in support of claim, the Veteran reported treatment by his private primary care physician, a private oncologist, and testing performed at the North Okaloosa Medical Center from November 2008 to May 2009. However, the above stated records have not been associated with the claims file. As these private treatment records may contain information pertinent to his claims, they are relevant and should be obtained. See 38 C.F.R. § 3.159(c)(2) (2010); Bell v. Derwinski, 2 Vet. App. 611 (1992). Additionally, the Veteran should be contacted to provide any additional treatment records in his possession or authorize VA to obtain those records on his behalf. 

Accordingly, the case is REMANDED to the AMC for the following action:

1) The AMC should contact the Veteran and request that he provide a completed release form (VA Form 21-4142) authorizing VA to request copies of any treatment records from any private medical providers who have treated him for his claimed peripheral neuropathy and hypogammaglobulinemia. 

After the Veteran has signed the appropriate releases, those records not already associated with the claims file, should be obtained and associated therewith. All attempts to procure any outstanding treatment records should be documented in the claims file. If the AMC cannot obtain records identified by the Veteran, a notation to that effect should be included in the claims file and the Veteran and his representative should be notified of unsuccessful efforts in this regard, in order to allow him the opportunity to obtain and submit those records for VA review.

2) After obtaining any available treatment records, the AMC should schedule the Veteran for an appropriate VA examination to determine the nature and etiology of the Veteran's respiratory disorders, to include chronic sinusitis and recurrent bronchitis. The claims file and a copy of this remand must be made available to and reviewed by the examiner in conjunction with the examination. All indicated studies should be performed, and all findings should be reported in detail. 

The examiner is requested to specifically address whether it is at least as likely as not that the Veteran's hypogammaglobulinemia is manifested by a chronic respiratory condition, and if so, the examiner is requested to detail the current nature and severity of that respiratory condition. Specifically, the examiner should note the number of incapacitating episodes, non-incapacitating episodes, medication prescribed, and any other symptoms associated with the Veteran's respiratory conditions.

In rendering this opinion, the examiner should acknowledge the medical evidence of record, including the Veteran's service treatment records, VA outpatient treatment records, the April 2010 VA examination report, the November 2008 Travel Board hearing transcript, the research articles discussing hypogammaglobulinemia submitted by the Veteran, and any other relevant information. Furthermore, the examiner should also discuss the Veteran's lay statements regarding chronicity of symptomatology when discussing the offered opinion.

The examiner is asked to provide complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions.

3) The Veteran should be scheduled for a VA examination with an appropriate specialist to evaluate the Veteran's peripheral neuropathy. The claims file and a copy of this remand must be made available to and reviewed by the examiner in conjunction with the examination. All necessary tests should be conducted.

The examiner is requested to provide an opinion as to the diagnosis, date of onset, and etiology of the Veteran's peripheral neuropathy. 

The examiner should also provide an opinion as to whether it is at least as likely as not that the Veteran's peripheral neuropathy had its onset during active service or is related to any in-service disease, event, or injury. 

Additionally, the examiner should provide an opinion as to whether it is at least as likely as not that the Veteran's peripheral neuropathy was caused and/or aggravated by his service-connected hypogammaglobulinemia. Additionally, the examiner should specifically address whether there was any increase in severity of the Veteran's peripheral neuropathy that was proximately due to or the result of the Veteran's hypogammaglobulinemia, and not due to the natural progress of peripheral neuropathy.

In rendering these opinions, the examiner should acknowledge the medical evidence of record, including the Veteran's service treatment records, VA outpatient treatment records, the April 2010 VA examination report, the November 2008 Travel Board hearing transcript, the research articles discussing hypogammaglobulinemia submitted by the Veteran, and any other relevant information. Furthermore, the examiner should also discuss the Veteran's lay statements regarding chronicity of symptomatology when discussing the offered opinion.
 
The examiner is asked to provide a complete rationales for all opinions and conclusions reached, citing the objective medical findings leading to the conclusions.

4) Following the completion of the foregoing, and after undertaking any other development it deems necessary, the AMC should readjudicate the Veteran's claims, considering all applicable laws and regulations, to include the respiratory diagnostic codes 6502-6847. If a claim is denied, the AMC should provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate period of time for response. Thereafter, the claims folder should be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



_________________________________________________
J. A. MARKEY 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).