Citation Nr: 1237354 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 12-12 191 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection for headaches, to include cluster headaches and migraines.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

H. Seesel, Counsel






INTRODUCTION

The Veteran had active service from October 1997 until October 2000; from June 2006 until August 2007; and from June 2008 until June 2009. The Veteran served in Iraq from August 2008 until May 2009. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from February 2012 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

The Board has recharacterized the claim from service connection for cluster headaches to the broader claim of service connection for headaches, to include cluster headaches and migraines, because the record reflects other findings and diagnoses pertaining to the headaches. See Brokowski v. Shinseki, 23 Vet. App. 79, 85-87 (2009) (noting that a claimant's identification of the benefit sought does not require any technical precision and indicating that referring to a body part or system by describing symptoms may satisfy the requirement).

The appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the appellant if further action is required.


REMAND

A preliminary review of the record reflects that further development is necessary. Specifically, the duties to notify and assist have not been satisfied.

As an initial matter, there are service treatment records (STRs) which are either unavailable or not associated with the claims file. Specifically, a request was sent to the Records Management Center in August 2011 to obtain STRs for the Veteran's first period of service from October 1997 until October 2000. A response from the Records Management Center dated in August 2011 noted that no record was found and explained a flag was placed in the system so if records were found they would be transferred to the RO. In September 2011, another request for the STRs was sent to the Records Management Center. A review of the record does not reflect a response. 

Although an April 2011 report of contact notes that the Veteran was asked about his medical records and responded that he did not have his STRs, there is no indication he was properly notified that his STRs for his first period of service were unavailable. Significantly, the January 2011 notification letter advised him that the RO had requested the STRS from the service department and he did not need to contact the service department himself. The February 2012 rating decision and April 2012 Statement of the Case (SOC) list the evidence as including "service treatment records, including National Guard records, from October 9, 1997 through June 18, 2009." While the National Guard records are associated with the claims file, there is only one record, dated September 2000, from his first period of service. 

Under the duty to assist, VA is to assist the Veteran in the procurement of service treatment records and pertinent treatment records and provide an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA will make as many requests as are necessary to obtain relevant records, including service medical records, from a Federal department or agency. 38 C.F.R. § 3.159(c)(2). VA will end its efforts to obtain records from a Federal department or agency only if VA concludes that the records sought do not exist or that further efforts to obtain those records would be futile. Id. After continued efforts to obtain federal records, if VA concludes it is reasonably certain they do not exist, VA is to notify the claimant of this fact. 38 C.F.R. § 3.159(e). In such a case, VA is to provide oral or written notice of the fact they were unable to obtain the records and make a record of any oral notice conveyed to the claimant. The notice must advise the claimant of the identity of the records VA is unable to obtain, provide an explanation of the efforts VA took to obtain the records, provide a description of further action VA would take regarding the claim, including, but not limited to notice that VA will decide the claim based on the evidence of record unless the claimant submits the records VA is unable to obtain and provide notice that the claimant is ultimately responsibility for providing the evidence. Id. 

As the record does not indicate VA concluded that the STRs for the Veteran's service from October 1997 until October 2000 do not exist or that a further search would be futile, the RO should make efforts to obtain the STRs and associate them with the claims file. If upon further searching, the RO determines the records are unavailable, the RO must notify the Veteran in accordance with 38 C.F.R. § 3.159(e) and provide the Veteran with the opportunity to submit any records in his possession and any alternate source evidence that may substantiate his claims. 

In the present case, the Veteran indicated in a May 2012 statement that his headaches began during his active duty years as an Infantry Soldier while stationed with the 1st 22nd INF 4th ID. A review of the Veteran's Form DD 214s reflects the Veteran served with this unit during his first period of active duty from October 1997 until October 2000. He argued he was exposed to extreme temperatures, pollens, dust and smoke during long training assignments in the field. The Veteran has also alleged that he began having severe headaches upon his return from Iraq. He claims that exposure to environmental hazards in Iraq, including severe heat, ammunition, fatigue, dust, pollen, smoke and burn pits, caused or aggravated his headache condition. Documentation in the service treatment records includes a memorandum that the Veteran's unit was exposed to environmental contaminants, including burn pits, manganese, a chemical in the dioxin family and dust storms.

A Veteran is presumed in sound condition except for defects, infirmities or disorders noted when examined, accepted, and enrolled for service. 38 U.S.C.A. § 1111 (West 2002); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). The burden then falls on the Government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's disability was both preexisting and not aggravated by service. Wagner, 370 F.3d at 1096; Bagby, 1 Vet. App. at 227. The U.S. Court of Appeals for Veterans Claims (Court) in Horn v. Shinseki, explained that even when there is clear and unmistakable evidence of preexistence, the claimant need not produce any evidence of aggravation in order to prevail under the aggravation prong of the presumption of soundness. Rather, the burden is on VA to establish by clear and unmistakable evidence that it did not or that any increase was due to the natural progress of the disease. 25 Vet. App. 231, 235 (2012).

On the other hand, where a disorder is noted on service entrance or a Veteran is otherwise not presumed sound on entrance, 38 U.S.C.A. § 1153 applies. In such claims, the evidence of record must simply show that there was an increase in disability during service to trigger the presumption of aggravation. See Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); Jensen v. Brown, 19 F.3d 1413, 1417 (Fed. Cir. 1994). "If the presumption of aggravation under section 1153 arises, the burden then shifts to the government to show a lack of aggravation by establishing 'that the increase in disability is due to the natural progress of the disease.'" Wagner, 370 F.3d at 1096 (citing 38 U.S.C.A. § 1153). This requires the government show by clear and unmistakable evidence that any increase in disability was due to the natural progress of the condition. Cotant v. Principi, 17 Vet. App. 116, 130-32 (2003); Horn v. Shinseki, 25 Vet. App. at 235 (2012) ("Once the Veteran establishes worsening, the burden shifts to the Secretary to show by clear and unmistakable evidence that the worsening of the condition was due to the natural progress of the disease."); see also 38 C.F.R. § 3.306(b) (2011). 

Clear and unmistakable evidence means that the evidence "cannot be misinterpreted and misunderstood, i.e., it is undebatable." Quirin v. Shinseki, 22 Vet. App. 390, 396 (2009) (quoting Yanerson v. West, 12 Vet. App. 254, 258-59 (1999)). The clear-and-unmistakable-evidence standard is an "onerous" one. Laposky v. Brown, 4 Vet. App. 331, 334 (1993) (citing Akins v. Derwinski, 1 Vet. App. 228, 232 (1991)); see also Yanerson, 12 Vet. App. at 263 (Nebeker, C.J., concurring in part and dissenting in part) ("[O]nly an inference that is iron clad and copper riveted can be 'unmistakable.'").

As noted in the Introduction, in the present case the Veteran had three distinct periods of active service and has alleged both that his headaches began during his first period of service and alternatively argued that his headaches were aggravated during his subsequent two periods of service. As noted above, the records from the Veteran's first period of service are not presently available. The Court has held that the presumption of soundness applies even when the record of a Veteran's entrance examination has been lost or destroyed while in VA custody. Quirin, 22 Vet. App. at 397, n. 5 (citing Lee v. Brown, 10 Vet. App. 336, 339 (1997)). As such, at the present time, the Board must apply the presumption of soundness to the Veteran's first period of active service.

For the Veteran's second period of active service from June 2006 until August 2007, the record does not reflect an entrance examination. Smith v. Shinseki, 24 Vet. App. 40, 45 (2010) (noting the presumption requires a Veteran has been "examined, accepted, and enrolled for service" and therefore in the absence of such an examination there is no basis from which to determine whether the claimant was in sound condition upon entry.). The record reflects complaints of headaches and diagnoses of cluster headaches and migraine headaches as early as 2001. Prior to the Veteran's second period of service, the Veteran reported a history of frequent or severe headaches and explained they were cluster headaches on the April 2005 report of medical history completed for National Guard retention purposes. An April 2005 report of medical examination concluded the head was normal and noted no significant medical history. As there was no entrance examination or any similar examination performed directly prior to the Veteran's entrance in to service in June 2006 that could be considered akin to an entrance examination, the presumption of soundness does not apply to the Veteran's second period of service. As such, the relevant question is whether the pre-existing headaches increased in severity during the Veteran's second period of service. 

Finally, the Veteran had active service from June 2008 until June 2009, including a tour of duty in Iraq from August 2008 until May 2009. The Veteran reported taking medication for cluster headaches on a February 2008 Initial Medical Review/annual medical certificate. The initial reviewer noted the Veteran required further evaluation; however, the Veteran was ultimately found to be fit. On a May 2008 report of medical assessment, the Veteran indicated he was taking medication for cluster headaches. Significantly, the June 2008 pre-deployment health assessment noted that the Veteran was deployable but was to "see unit doc as needed for cluster headaches. Has had prior neuro work up." A July 2008 pre-deployment health assessment noted the Veteran was of "? deployable status, chronic cluster headaches incapacitating. Awaiting documentation." An August 2008 pre-deployment health assessment indicated the Veteran was cleared by neurology to deploy. Thus, for the Veteran's third period of service, although there was no official entrance examination, there was a contemporaneous examination performed directly prior to the Veteran's entrance into active service in June 2008. Smith, 24 Vet. App. at 46 (suggesting that an examination made contemporaneous with entrance could trigger consideration of the presumption of sound condition). Review of the June, July and August 2008 pre-deployment examinations clearly reflect a notation of cluster headaches. As the condition is considered noted upon entry, 38 U.S.C.A. § 1153 applies to the Veteran's third period of service.

While the Veteran was afforded a fee-basis VA compensation and pension examination by QTC Medical Services in October 2011, the Board finds this examination is incomplete. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (stating that once VA undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided). Specifically, the examiner only was asked whether the condition was aggravated by service, a question which does not address whether the headaches could have been caused by the Veteran's first period of service as the Veteran claimed. Furthermore, the examiner concluded that he could not provide an opinion as to whether a pre-existing cluster headache disability was aggravated by service without resorting to mere speculation. In rendering this opinion, however, the examiner only indicated that he was unable to establish the baseline of impairment. See Jones v. Shinseki, 23 Vet. App. 382 (2010) (indicating that the examiner must explain why the requested opinion would be speculative before the Board could rely on such a conclusion.). 

In the case of Jones v. Shinseki, 23 Vet. App. 382, 390 (2010), the Court found that the Board can only rely on a statement that an opinion cannot be reached "without resort to speculation" if the examiner has explained the basis for the conclusion or the Board's review of the evidence otherwise makes the basis apparent. Id. The examiner's rationale must clearly show that he or she obtained and considered all tests and records that could help illuminate any pertinent medical question and the examiner may have a duty to conduct further medical research. Id. The Court noted that such research may be necessary because use of the term "without resort to speculation" should reflect limitations of knowledge in the greater medical community, not just limitations of knowledge of a single examiner. Id. If the record does not indicate that all tests and records have been secured, then the Board must remand the claim for further development. Id.

Therefore, without further clarification, the Board is without medical expertise to determine if the headaches were caused or aggravated by any of the Veteran's periods of active service. Godfrey v. Brown, 7 Vet. App. 398 (1995); Traut v. Brown, 6 Vet. App. 495 (1994); Colvin v. Derwinski, 1 Vet. App. 171 (1991). In sum, the Board finds that a VA examination is necessary to elucidate and reconcile the existing medical evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC must review its prior attempts to locate the Veteran's complete service treatment records. If there are records from October 1997 until October 2000, the RO/AMC should associate these records with the claims file. If satisfied that all reasonable efforts to locate these records have been exhausted, and the RO/AMC determines the records are unavailable, the RO/AMC must notify the Veteran and (a) identify the specific records the RO is unable to obtain; (b) briefly explain the efforts that the RO made to obtain those records; and (c) describe any further action to be taken by the RO/AMC with respect to the claims. The Veteran should further be informed of alternative sources for obtaining sufficient evidence to validate his claims (e.g., buddy statements, unit history searches, etc.). In addition, if the RO/AMC determines that a continued search for the Veteran's service treatment records would be futile, the Veteran should be provided an explanation of how the service treatment records are maintained, why the search that was undertaken constitutes a reasonably exhaustive search, and why further efforts (e.g., inquiries directed to the named facilities, if they are still operational) are not justified. The Veteran must then be given an opportunity to respond. 

2. The claims file should be sent to the examiner who conducted the October 2011 QTC neurological examination for clarification of the opinion provided. If the examiner that evaluated the Veteran in October 2011 is not available to provide a response, then any similarly qualified VA or QTC examiner may answer this inquiry. If additional examination of the Veteran is deemed necessary by the examiner, schedule the Veteran for an appropriate examination, perform all necessary tests, and respond to the above question(s).

Following a review of the file, the examiner should comment upon the following:

a) Whether it is at least as likely as not (a 50 percent or greater probability) that any currently diagnosed headaches were caused or aggravated by the Veteran's first period of service from October 1997 until October 2000. The examiner should specifically consider the Veteran's reports of headaches after long training exercises.

b) Whether it is at least as likely as not (a 50 percent or greater probability) that any currently diagnosed headaches increased in severity during the Veteran's second period of service from June 2006 until August 2007? The examiner must also comment upon the Veteran's reported history of headaches. 

c) If the headaches increased in severity during the Veteran's period of service from June 2006 until August 2007, then the examiner should opine as to whether the evidence clearly and unmistakably demonstrates that the increase was due to the natural progression of the headache disability.

d) Whether it is at least as likely as not (a 50 percent or greater probability) that any currently diagnosed headaches increased in severity during the Veteran's period of service from June 2008 until June 2009? The examiner must also comment upon the Veteran's reported history of headaches and should specifically comment on the impact of exposure to environmental toxins in Iraq, including burn pits, chemicals and dust storms. 

e) If the headaches increased in severity during the Veteran's service from June 2008 until June 2009, the examiner should opine as to whether the evidence clearly and unmistakably demonstrates that the increase was due to the natural progression of the headache disability.

A clear rationale for all opinions is required, to include a discussion of the facts and medical principles involved. Copies of all pertinent records in the Veteran's claims file, or in the alternative, the claims file, must be made available to the examiner for review in connection with the examination. 

3. The RO should take such additional development action as it deems proper with respect to the claim, and follow any applicable regulations and directives implementing the provisions of the VCAA as to its notice and development.

4. When the development requested has been completed, the case should again be reviewed by the RO/AMC and the claims remaining on appeal readjudicated. If the benefits sought are not granted, the Veteran and her representative should be furnished a SSOC, and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review. 


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).


_________________________________________________
JOHN Z. JONES
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2011).