Citation Nr: 1528180 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 10-39 267 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to service connection for a recurrent right knee disorder to include strain and degenerative changes. 

2. Entitlement to service connection for a recurrent left knee disorder to include strain and degenerative changes.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Appellant and spouse



ATTORNEY FOR THE BOARD

T. S. Kelly, Counsel 

INTRODUCTION

The Veteran, who is the appellant, had active service from October 1980 to February 1981 and from April 1998 to December 1998. He also had additional duty with the Army Reserve. 

This matter originally came before the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating determination of the Phoenix, Arizona, Department of Veterans Affairs (VA) Regional Office (RO) which, in pertinent part, denied right knee strain and degenerative changes and left knee strain and degenerative changes. 

In December 2010, the Veteran was afforded a videoconference hearing before the undersigned Veterans Law Judge. A hearing transcript is of record. 

In August 2011, the Board, in pertinent part, remanded the issues of service connection for right knee and left knee disorders to the RO for additional action. 

In March 2013, the Board, in pertinent part, denied service connection for both a right knee disorder and a left knee disorder. The Veteran subsequently appealed to the United States Court of Appeals for Veterans Claims (Court). 

In September 2013, the Court granted the Parties' Joint Motion for Partial Remand; set aside that portion of the March 2013 Board decision which denied service connection for right knee and left knee disorders; and remanded those issues to the Board for additional action. In April 2014, the Board remanded the Veteran's appeal to the RO. 

The matter was once again remanded in November 2014 for further development, to include obtaining additional records and a VA examination. The requested development has been accomplished insofar as possible and the matter is ready for appellate review. 

The Board has reviewed both the Veterans Benefit Management System (VBMS) and the "Virtual VA" files. This appeal was processed using the VBMS paperless claims processing system. 


FINDINGS OF FACT

1. The Veteran did not sustain a disease or injury of the right or left knee during service.

2. The Veteran has been diagnosed with chronic strain of the right and left knees.

3. The Veteran does not have arthritis of the right and left knees which manifested within one year of separation from service.

4. The Veteran's right and left knee disorders are not causally or etiologically related to service, including his service-connected bilateral ankle disabilities. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a right knee disorder are not met. 38 U.S.C.A. §§ 101, 1101, 1110, 1112, 1131, 1154 (West 2014); 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.304, 3.307, 3.309, 3.310 (2014).

2. The criteria for service connection for a left knee disorder are not met. 38 U.S.C.A. §§ 101, 1101, 1110, 1112, 1131, 1154 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.310 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS


Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The United States Court of Appeals for Veterans Claims (Court) issued a decision in the appeal of Dingess v. Nicholson, 19 Vet. App. 473 (2006), which held that the notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim, including the degree of disability and the effective date of an award. Those five elements include: (1) veteran status; (2) existence of a disability; (3) a connection between a veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability.

In this case, the agency of original jurisdiction (AOJ) issued a notice letter, dated in June 2008 to the Veteran. The letter explained the evidence necessary to substantiate the Veteran's claim for service connection, as well as the legal criteria for entitlement to such benefits. The letter also informed him of his and VA's respective duties for obtaining evidence. The AOJ decision that is the basis of this appeal was decided after the issuance of an initial, appropriate VCAA notice. As such, there was no defect with respect to timing of the VCAA notice. See Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Additionally, the letter from VA to the Veteran explained how a disability rating is determined for a service-connected disability and the basis for determining an effective date upon the grant of any benefit sought. 

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.159(c)(4).

In this case, the claims file contains the Veteran's service treatment records and private and VA treatment records. Moreover, in conjunction with the November 2014 remand, the Veteran was requested to provide the names and dates of any additional treatment received that had not been previously associated with the record. In January 2015, the Veteran was requested to provide the names and addresses as well as written authorizations to obtain any additional records. To date, the Veteran has not provided any additional information. There has also been no indication that any records remain outstanding. 

The Veteran was afforded VA examinations in June 2008, July 2010, and February 2015. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examinations of record are adequate for rating purposes, because they were performed by a medical professional, was based on a thorough examination of the Veteran, and reported findings pertinent to the rating criteria. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008); see Barr v. Nicholson, 21 Vet. App. 303 (2007) (holding that VA must provide an examination that is adequate for rating purposes). Thus, the Board finds that a further examination is not necessary regarding the above issues. 

The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of the claim, including by submission of statements and arguments presented by his representative and has appeared at a videoconference hearing in December 2010. For these reasons, it is not prejudicial to the appellant for the Board to proceed to finally decide the appeal. Based upon the foregoing, the duties to notify and assist the Veteran have been met, and no further action is necessary to assist the Veteran in substantiating this claim.



Service Connection for Right and Left Knee Disorders

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996).

Active military, naval, or air service includes any period of active duty for training (ACDUTRA) during which the individual concerned was disabled from a disease or injury incurred in the line of duty. 38 U.S.C.A. § 101(21),(24); 38 C.F.R. § 3.6(a). Active military, naval, or air service also includes any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled from an injury incurred in the line of duty. Id. Accordingly, service connection may be granted for disability resulting from disease or injury incurred in, or aggravated, while performing ACDUTRA or from injury incurred or aggravated while performing INACDUTRA. 38 U.S.C.A. §§ 101(24), 106, 1110, 1131.

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

Arthritis is a "chronic disease" listed under 38 C.F.R. § 3.309(a). If present, the provisions of 38 C.F.R. § 3.303(b) are for application. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b). 

Where a veteran served continuously for ninety days or more during a period of war or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of ten percent within one year of termination of such service, such disease shall be presumed to have been incurred in service even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310(a) (2014); Harder v. Brown, 5 Vet. App. 183, 187 (1993). Additional disability resulting from the aggravation of a nonservice-connected condition by a service-connected condition is also compensable under 38 C.F.R. § 3.310(a). See Allen v. Brown, 7 Vet. App. 439, 448 (1995). 

Generally, lay evidence is competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308 -09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). 

Lay evidence can be competent and sufficient evidence of a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The Court held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

The Veteran seeks service connection for bilateral knee disorders. At his December 2010 hearing, he testified that the manner in which he puts weight on his knees due to his ankle disability, causes his knees to ache and causes his right knee to give out. He also indicated that he did not hurt his knees on the job after he got out of service and that his doctors have told him that the knee problems are caused by his ankle disabilities based on the weight bearing and weakness of his ankles. 

The Veteran does not allege, and a review of his official military documentation contained in his claims file does not otherwise indicate, that he engaged in combat against enemy forces as contemplated by VA regulations. His DD Form 214 does not reflect that he received any decorations or medals indicative of involvement in combat. According to the DD Form 214, the Veteran's military occupational specialty (MOS) was armor crewman. There is no other sufficient indication of combat service, either. For these reasons, the Board finds that the Veteran did not "engage in combat." Consequently, the evidentiary presumption of 38 U.S.C.A. § 1154(b) is not applicable. 

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence demonstrates that the Veteran did not sustain right or left knee disorders during service, that the Veteran did not have symptoms of right and left knee disorders in service, and that the Veteran's current right and left knee disorders are not causally or etiologically related to his service. 

Service treatment records reflect that the Veteran did not receive treatment for, or made complaints regarding, either of his knees during his periods of active service. A July 1984 Report of Medical Examination notes that clinical evaluation revealed that the Veteran's lower extremities were normal and that he denied then having, or ever having had, lameness or "trick" or locked knee. Similarly, August 1987 and June 1990 Reports of Medical Examination note that clinical evaluation revealed that his lower extremities were normal. Therefore, service records do not show symptoms of a left or right knee disorder during active duty service. 

The Veteran was diagnosed with chronic strain of the right and left knees in March 2008, nearly 10 years after his last period of active duty service. Although the Veteran is competent to report certain symptoms of right and left knee disorders, a September 2006 VA orthopedic consultation record indicates complaints of ankle pain, without any indication of knee complaints. At the June 2008 VA examination, the Veteran gave a subjective history of onset of his knee symptoms in 2006, with pain, popping noises, and giving way, which occurred without injury. At the December 2010 videoconference hearing, the Veteran testified that he had no other knee injuries, and that his service-connected ankle disabilities caused his knee complaints. These statements, combined with the clinical evidence of record, do not demonstrate a relationship between the Veteran's active service and his current bilateral knee disorder, either on a direct basis or as secondary to his service-connected bilateral ankle disabilities. The Board acknowledges that a March 2008 private medical opinion from the Carnett Clinic notes that the Veteran complained of knee and back pain, which may be due to his ankle pain. However, the Board observes that the June 2008 and July 2010 VA examiners, as well as the physician providing the September 2011 VA addendum report, opined that the Veteran's current knee complaints are unrelated to his military service, including his service-connected bilateral ankle disabilities. 

While the record reflects a diagnosis of degenerative joint disease of the knees in 2008, to substantiate a claim of presumptive service connection for such disability as a chronic disease, there must be evidence that it was manifested to a compensable degree in the first post-service year. The Board acknowledges that the Veteran was diagnosed with mild degenerative changes of the right and left knees in 2008. In this regard, a March 2008 private treatment record from Sierra Vista Diagnostics notes that x-rays were performed due to bilateral knee pain and that they revealed minor degenerative changes in both knees. However, x-rays completed in conjunction with the June 2008 VA examination demonstrate that the Veteran had strains of the knees and not degenerative changes indicative of arthritis. As such, it is unclear from the clinical evidence of record whether the Veteran has arthritis of the right and left knees. Regardless, arthritis of the right and left knees did not manifest within one year of separation from service.

The Veteran's right and left knee disorders are not causally or etiologically related to service, including his service-connected bilateral ankle disabilities. At the June 2008 VA joints examination, the Veteran complained that he currently experienced pain, popping noises, and giving way. He asserted that his knee complaints were related to his service-connected ankle disabilities, as his knee complaints started after his ankle complaints. Physical examination showed pain on movement and tenderness to palpation, but otherwise normal evaluation. X-rays taken at that time were normal. The diagnosis was strain of the knees and the VA examiner opined that the Veteran's right and left knee strains were not caused by or related to his service-connected bilateral ankle disabilities. 

At the July 2010 VA examination, the Veteran reported onset in 2007 for the right knee and left knee onset in 2008; he complained of daily pain, popping noises, and instability of the right knee. Following physical examination and review of the record, the VA examiner diagnosed the Veteran with chronic strain of the right and left knees. The VA examiner opined that the Veteran's right and left disorders were not caused by or related to his service-connected bilateral ankle disabilities. The VA examiner noted that the Veteran had no trauma to the knees, and no definite trauma to the ankles, in 1998, and further reasoned that there was no orthopedic or biomechanical reason why the Veteran would present with knee difficulties, alone, or as related to the service-connected bilateral ankle disabilities. 

In September 2011, a VA examiner opined that it was unlikely that the Veteran's right and left knee disorders were caused or aggravated by the Veteran's service-connected bilateral ankle disabilities. The VA examiner reasoned that there was no injury at the onset of the Veteran's knee disorders and there was a 10 year lapse between the Veteran's initial treatment for his knees and the onset of his ankle disabilities. 

Moreover, following examination of the Veteran in February 2015, the VA examiner indicated that the Veteran's bilateral knee disorders were not at least as likely as not aggravated beyond their natural progression by the service-connected disabilities. The examiner stated that none of the service-connected conditions the Veteran suffered from, namely, right ankle strain, left ankle strain, hearing loss, or tinnitus, were known to aggravate right and/or left knee strain.

The Board finds that the June 2008, July 2010, September 2011, and February 2015 VA opinions are the most probative with regarding to whether the knee disorders are related to service or caused or aggravated by a service-connected disability. The examiners reviewed the claims folder/VBMS file, interviewed the Veteran, and conducted physical examinations. The examiners provided adequate rationale for the findings and conclusions of their opinions. There is no indication that the VA examiners were not fully aware of the Veteran's past medical history or misstated any relevant fact. Therefore, the Board finds the opinions to be of great probative value regarding whether the Veteran's claimed right and left knee conditions are caused or aggravated by his service-connected ankle disabilities.

The Board acknowledges the March 2008 opinion from Carnett Clinic, which stated that the Veteran's knee disorders may be related to his service-connected ankle disorders, but finds that the opinion lacks probative value in the absence of a rationale for the opinion. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000) (stating that factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion). The Board notes that a bare conclusion, even one reached by a health care professional, is not considered to be probative without a factual predicate in the record. See Miller v. West, 11 Vet. App. 345, 348 (1998). Moreover, a statement such as this, which is couched in speculation, is of no probative value and cannot support the claim. See generally Obert v. Brown, 5 Vet. App. 30, 33 (1993); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992)(medical evidence that is speculative, general or inconclusive in nature cannot support a claim).

The Board has also considered the Veteran's statements and sworn testimony asserting a causal relationship between his currently diagnosed bilateral knee disorder and service-connected bilateral ankle disorder. While the Board again notes that he is competent to report symptoms as they come to him through his senses, a lay person cannot provide competent evidence on whether a currently diagnosed bilateral knee disability is caused by abnormal weightbearing or biomechanical abnormality due to a service-connected bilateral ankle disability. See Layno, supra; Davidson, 581 F.3d at 1316. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, whether the claimed knee disabilities are due to service or to a service-connected disability falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer)."

For the foregoing reasons, the preponderance of the evidence weighs against the award of service connection for right and left knee disorder; therefore, service connection must be denied. The benefit of the doubt doctrine is not applicable. 
38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



ORDER

Service connection for a right knee disorder is denied. 

Service connection for a left knee disorder is denied. 




____________________________________________
K. J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs