Citation Nr: 1719235 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 11-27 724 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for a right elbow disability. 


REPRESENTATION

Appellant represented by: 


ATTORNEY FOR THE BOARD

S. Baxter, Associate Counsel







INTRODUCTION

The Veteran had active military service from May 1984 to August 1984, September 2002 to August 2003, August 2004 to December 2005, and August 2003 to October 2009. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

In September 2014, March 2015, August 2015, and June 2016, the Board remanded the case for further development to include VA examinations and opinions. The case has been returned to the Board for appellate review. 

This appeal includes documents contained in the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of all these records.


FINDING OF FACT 

A chronic right elbow disability was not shown in service and is not otherwise related to the Veteran's active service.


CONCLUSION OF LAW 

A right elbow disability was not incurred in or aggravated by service, and may not be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1101, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310, 3.317 (2016).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

Under the VCAA, upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103 (a); 38 C.F.R. § 3.159 (b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) VA must ask the claimant to provide any evidence in her or his possession that pertains to the claim in accordance with 38 C.F.R. § 3.159 (b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Here, the Board finds that the VA has satisfied its duties under the VCAA. Specifically, a letter was sent to the Veteran in March 2010 which detailed the claims process and advised the Veteran of the evidence and information needed to substantiate his claim on a direct and secondary basis. The letter further informed the Veteran of his obligations to provide necessary information to assist in his claim and the VA's obligations to obtain such evidence and information that is deemed to be in the VA's possession or that the VA has permission to obtain. 

In regard to the duty to assist, the Veteran was afforded several VA examinations in March 2010, December 2014, March 2015 and October 2016. Although, some of these examinations were deemed inadequate, the deficiency was addressed in the October 2016 examination and January 2017 medical addendum opinion. The examiner reviewed the electronic file, examined the Veteran and considered his statements prior to rendering their opinions. The examiner provided a rationale for the opinions offered. Therefore, the Board finds that the VA examiner provided sufficient information for the Board to render an informed determination. Further, the Veteran's service treatment records, VA treatment and private treatment records have been obtained and considered. 

Given the VA examination report and addendum opinion; and the subsequent readjudication of the claim, the Board finds that there has been substantial compliance with its remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1131, 1110 (West 2014); 38 C.F.R. 3.303(a)(2016). Service connection may be granted for any disease initially diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d)(2016). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). 

Additionally, service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a) (2016). See Harder v. Brown, 5 Vet. App. 183, 187 (1993). Additional disability resulting from the aggravation of a non-service-connected condition by a service-connected condition is also compensable under 38 C.F.R. § 3.310 (a). See Allen v. Brown, 7 Vet. App. 439, 448 (1995).

For Veterans who served in the Southwest Asia theater of operations during the Persian Gulf War, service connection may also be established for chronic disability that cannot be attributed to a known clinical diagnosis (undiagnosed illness) or for a medically unexplained multi-symptom illness (e.g., chronic fatigue syndrome, fibromyalgia, or irritable bowel syndrome). See 38 C.F.R. § 3.317. 

A claimant's signs or symptoms need not be shown by medical evidence; however, some objective indications of disability are required. 38 C.F.R. § 3.317 (a). Objective indications of chronic disability include both signs, in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317 (a)(3). Signs or symptoms that may be manifestations of undiagnosed illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317 (b).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).
When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A Veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465, 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d 1372, 1377.

Right Elbow Disability 

The Veteran contends that he has suffered from right elbow pain ever since his service in Iraq in 2005. He specifically stated that he sustained this injury while playing softball in service. He also indicated that his service-connected right shoulder disability has caused pain with movement in his right elbow. See September 2010 Notice of Disagreement. 

The Veteran's service treatment records (STRs) do not show any complaints or treatment for a right elbow condition during his active service. A September 2005 medical record request revealed the Veteran had right shoulder pain, but no complaints of the right elbow. See September 7, 2005 Medical Records Consultation Sheet. Additionally, in a September 2005 physical profile it was revealed that the Veteran had a shoulder injury. The Veteran reported that he injured himself playing softball and was complaining of right shoulder pain. See September 09, 2005 Physical Therapy Consultation-Continuation Sheet. Later in 2006 the Veteran complained of decreased hearing, tight shoulder pain, back pain and numbness in the right hand. However, there were no complaints regarding the right elbow. See July 07, 2006 DD Form 2807-1, Oct 2003. The veteran's STR's did reveal a complaint of an injury playing softball however, the only such complain was of right shoulder pain. 
The Veteran was afforded a VA examination of the right elbow in March 2010. The examiner diagnosed the Veteran with tendonitis. The Veteran reported symptoms of weakness, stiffness, pain, and numbness. There was no overall functional impairment. The X-rays of the right elbow were within the normal limits. Although there was a diagnosed condition, it was shown not to be related to his military service. See March 2010 VA Examination. 

As the March 2010 examiner did not provide an opinion concerning the nature and etiology of the Veteran's right elbow tendonitis, the Board remanded this matter to determine the nature and etiology of his right elbow tendonitis. See September 2014 Board Remand.

The Veteran was afforded another VA examination in December 2014. The Veteran reported that he developed right elbow pain while deployed to Iraq. X-rays of the right elbow at the time were unremarkable, and right elbow tendonitis was diagnosed. The examiner opined that it was less likely than not that the Veteran's right elbow tendonitis is due to his time in service and that it was more likely that such disability is due to his civilian job as a plumber. For his rationale, the examiner concluded the lack of treatment for right elbow pain in the Veteran's STRs, lack of recent treatment for chronic elbow tendonitis in the VA system, the findings on the current VA examination (including negative X-rays), and the fact that the Veteran is required to use his right dominant hand regularly in his job as a plumber. See December 2014 VA Examination. 

The Board remanded the matter again in March 2015, in an effort to obtain a new examination as the December 2014 examiner provided a negative etiology opinion without consideration of the Veteran's reports. Therefore, the Board remanded this matter to obtain an etiology opinion that took into account the Veteran's report of his history, the reported in-service injuries, exposures, or events, and his current symptoms. See March 2015 Board Remand.

The Veteran was afforded another VA examination in March 2015. The Veteran reported that his right elbow pain (with associated numbness and tingling) begun in 2004-2005 during his deployment in Iraq and had continued since that time. He was diagnosed with right elbow tendonitis. The March 2015 examiner noted: "I am unable to opine as to whether the Veteran's right elbow tendonitis was at least as likely as not incurred during or caused by active duty without resort to mere speculation." For his rationale, the examiner concluded that, while the Veteran reported a painful right arm condition since service, his elbow pain may well have been related to his service-connected shoulder or median nerve conditions (or other possible confounding conditions such as a cervical radiculopathy or other nerve impingement, etc.) rather than a right elbow condition. The examiner noted that it was unusual for a right elbow tendonitis to continue for more than 6 to 12 months, as it generally heals with time, and that the diffuse nature of symptoms in his right arm (from shoulder to fingers) caused this examiner "significant difficulties with the process of even making a current diagnosis of a right elbow condition. Even more so, it is difficult for the Veteran or for this examiner to determine whether a right elbow condition has existed since service without evidence in the available record in the form of history and physical examination data or the mechanism of injury. There was no current additional evidence which would allow an opinion to be rendered. It is the lack of historical evidence and the diffuse nature of the symptoms, involving the entire right arm, which prevent my ability to form an opinion in this matter." See March 2015 VA Examination. 

The Board remanded the matter again in August 2015, in an effort to obtain an addendum opinion finding that the March 2015 examiner did not address the medical question as to whether the Veteran's right elbow tendonitis had been caused or aggravated by his service-connected right shoulder degenerative arthritis and/or carpal tunnel syndrome of the right upper extremity. Additionally, while the Veteran had a diagnosis of right elbow tendonitis, because the March 2015 examiner indicated that the Veteran's "diffuse nature of symptoms" caused "significant difficulties with the process of even making a current diagnosis of a right elbow condition," the Board found that an addendum medical opinion was necessary to address whether the Veteran's right elbow joint pain may be a manifestation of an undiagnosed illness. See August 2015 Board Remand. 

A medical addendum opinion was provided in November 2015. The examiner opined it was less likely than not that the Veteran's right elbow tendonitis was caused or aggravated by his service-connected degenerative arthritis of the right shoulder. As to secondary service connection she opined that carpal tunnel syndrome does not case elbow tendonitis. For her rationale, she concluded "It is unlikely that the shoulder is causing or aggravating the elbow tendonitis. A chronic tendonitis would show evidence of chronic tendonitis such as calcification in the tendon on X-ray if it had been chronically aggravated by the shoulder condition." She noted that if tendonitis is due to nerve compression in the wrist area. Nerve compression does not cause symptoms proximal to the site of the nerve compression. It is not possible from a medical standpoint. Additionally, she opined it is less likely than not that the Veteran is suffering from an undiagnosed illness or chronic disability manifested by right elbow joint pain. For her rationale, she concluded that, "The Veteran had a normal x-ray and a normal range of motion in the December 2014 examination. There was a significant reduction since then and a very inconsistent examination at the March 2015 examination. There were no complaints of elbow pain in his treatment records in 2015. It is not likely that there is an undiagnosed condition. It would be very unusual for someone who worked as a plumber for their livelihood to have such degradation in elbow function within a six month time period and not seek medical attention and treatment." See November 2015 Medical Addendum Opinion

The Board remanded the matter again in June 2016, in an effort to obtain a new examination and opinion as the November 2015 did not address whether the Veteran's right elbow tendonitis was aggravated by his service-connected carpal tunnel syndrome of the right upper extremity. Additionally, it was unclear whether the Veteran had a current diagnosis for his right elbow pain. Therefore, the Board remanded this matter. See June 2016 Board Remand. 

The Veteran was afforded another VA examination in October 2016. The Veteran reported that his right elbow pain was radiating down his shoulder. The Veteran was diagnosed with right elbow tendonitis. The examiner noted the combination of right shoulder rotator cuff tendonitis for the decrease in elbow strength. Upon physical examination the right elbow range of motion was normal except for 10 degrees loss of forearm supination down from 85 degrees as normal to 75 degrees. The right elbow strength was reduced to 4 over 5, where 5 over 5 were normal. See October 2016 VA Examination. 

The examiner provided a medical addendum opinion in January 2017. She opined that the condition was less likely than not caused by the Veteran's active period of military service, permanently aggravated by a service-connected condition or, due, given the fact that a diagnosis has been rendered, is due to an undiagnosed illness. The examiner noted that the Veteran's service medical records do not show an injury, disease, or an event to substantiate direst service connection and the records indicated the Veteran hurt his elbow playing softball in a post-service incident. The examiner also noted, that carpal tunnel syndrome, for which the Veteran is service-connected, cannot cause elbow tendonitis nor aggravate it beyond its natural progression, because nerve compression at one site (right shoulder carpal tunnel) does not affect, via causation or aggravation, nerve compression at another site (right elbow tendonitis). See January 2017 Medical Addendum Opinion. 

The Board finds that the preponderance of the evidence is against a finding that the Veteran has a right elbow disability which is related to active service.

The Board notes that there is no indication that the Veteran's right elbow disability is related to his active service except for the Veteran's own statements. In this regard, the Board observes that the Veteran's STRs do not indicate a right elbow disability. The STRs revealed that the Veteran complained of right shoulder pain from a softball injury but no complaints of an elbow injury. As explained by the VA examiner, his right elbow is not related to in-service events as described by the Veteran. The Veteran was diagnosed with right elbow tendonitis; however, no medical professional has associated this with his period of active duty or any incident of service. Additionally, the only probative medical opinion of record indicates that the Veteran's right elbow disability is not secondary to, caused, or aggravated by his service-connected right shoulder carpal tunnel disability. The examiner in this opinion was able to review the Veteran's electronic file and exam the Veteran. She acknowledged the Veteran's lay reports and addressed the Veteran's right elbow condition. She opined that his elbow condition was less likely than not caused by the Veteran's active period of military service, permanently aggravated by a service-connected condition or, due, given the fact that a diagnosis has been rendered, is due to an undiagnosed illness. She also noted , the Veteran's carpal tunnel syndrome, for which the Veteran is service-connected, cannot cause elbow tendonitis nor aggravate it beyond its natural progression, because nerve compression at one site (right shoulder carpal tunnel) does not affect, via causation or aggravation, nerve compression at another site (right elbow tendonitis).

Also, while the Veteran has qualifying service in Southwest Asia during the Persian Gulf War, the Veteran has not alleged, and the medical evidence does not show, that the complaints of his right elbow do not have a known clinical diagnosis or are a symptom of a medically unexplained multi-symptom illness. See 38 C.F.R. § 3.317. Additionally, the medical evidence is against the claim. Indeed, as noted above the Veteran's complaints of right elbow pain have been attributed to tendonitis, and therefore diagnosis has been rendered. The January 2017 examiner provided an opinion that the Veteran's condition was less likely than not caused by the Veteran's active period of military service due to an undiagnosed illness. Therefore, service connection for a right elbow disability based on Southwest Asia service is not warranted in this case.

In sum, taking into account all of the evidence of record, the Board finds that the preponderance of the evidence is against a finding that the Veteran's claimed right elbow disability is related to active service, any incident of active service or are secondary to, caused, or aggravated by any service-connected disability. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

 (CONTINUED ON NEXT PAGE)






ORDER

Entitlement to service connection for a right elbow disability is denied. 




____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs