Citation Nr: 1755129 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 13-21 881 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for vertigo with nausea and vomiting, to include as secondary to service-connected bilateral hearing loss.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to May 29, 2013.



REPRESENTATION

Appellant represented by: Jacques P. DePlois, Attorney at Law



ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel


INTRODUCTION

The Veteran served on active duty from July 1954 to October 1957. 

This matter came before the Board of Veterans' Appeals (hereinafter Board) on appeal of rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. By a rating action in September 2010, the RO denied the Veteran's claim of entitlement to service connection for vertigo with nausea and vomiting. Subsequently, in a January 2015 rating decision, the RO denied the claim for a TDIU, prior to May 29, 2013. The Veteran perfected timely appeals to those decisions. 

In July 2016, the Board remanded the case to the RO for further evidentiary development. Following the requested development, a supplemental statement of the case (SSOC) was issued in December 2016. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a) (2) (2012).

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 


FINDING OF FACT

The Veteran's currently diagnosed vertigo with nausea and vomiting is related to an inservice head injury sustained in 1955 while working as an Air Police. 

CONCLUSION OF LAW

The criteria for service connection for vertigo with nausea and vomiting have been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017). 

REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (a) (2017). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be established for disability that is proximately due to or the result of a service- connected disease or injury. 38 C.F.R. § 3.310 (a); see Harder v. Brown, 5 Vet. App. 183, 187 (1993). 

The provisions of 38 C.F.R. § 3.310 indicate, in pertinent part, that disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. The Court has clarified that service connection shall be granted on a secondary basis under the provisions of 38 C.F.R. § 3.310 (a) where it is demonstrated that a service-connected disorder has aggravated a nonservice-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995). 

The Veteran can provide competent reports of factual matters of which he has first-hand knowledge, such as experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition (noting that sometimes the lay person will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Similarly, laypersons are competent to diagnose and provide nexus opinions to some extent, notably where the diagnosis or opinion is not of a complex nature. Id., see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. 

The Veteran contends that he is entitlement to service connection for vertigo, which he claims is due to military service, or as secondary to his service-connected bilateral hearing loss. In a statement in support of claim (VA Form 21-4138), dated in February 2010, the Veteran maintained that his hearing became so bad that he had to turn his hearing aids up high which, in turn, caused him problems with equilibrium. The Veteran indicated that he never had problems with vertigo or any type of motion sickness before he started wearing the hearing aids. 

After a review of all the evidence of record the Board finds that the preponderance of the evidence supports a finding that the Veteran's current vertigo with nausea and vomiting is due to an inservice injury. 

By a rating action in December 2006, the RO granted service connection for bilateral hearing loss. Subsequently, in January 2009, a decision review officer (DRO) decision granted service connection for tinnitus. 

The record contains multiple treatment records showing that the Veteran has a current disability manifested by vertigo. For example, following a VA examination in August 2010, the examiner reported a diagnosis of positional vertigo, NOS. Following a VA examination in June 2013 for ear disease, the examiner diagnosed the Veteran with positional vertigo. Thus, the requirement of a current disability has been fulfilled. 

Moreover, the Board notes that the Veteran's DD Form 214, indicates that his military occupational specialty was as an Air Police Helper. In addition, in a statement, dated in August 2010, the Veteran indicated that he was working at an Air Force Base in Spokane, Washington as an Air Police when he was called to handle a physical fight; as he responded to the call, one of the airmen involved in the fight struck him on the left side of the head. The Veteran reported suffering a perforated eardrum, and experiencing dizziness and nausea. Moreover, VA examination reports in October 2008 and August 2010 report that the Veteran was struck in the head in 1955, sustaining laceration of the ear and traumatic perforation of the left ear. Therefore, the second element of the claim for service connection has been established. 

Therefore, in order to grant service connection, the remaining question is whether there is a relationship or nexus between the Veteran's currently diagnosed vertigo and his military service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

In this regard, the record contains conflicting opinions regarding the relationship between the Veteran's currently diagnosed vertigo and military service. The favorable medical evidence consists of the April 2010 VA examination report, wherein the examiner noted that the Veteran had "hearing aids but was unable to wear them successfully due to recurrent and increasing vertigo that appears to be associated with the wearing of his hearing aids. This vertigo may be induced by loud sounds (the Tullio phenomenon) and as such, may result from any type of amplification." Although this is a speculative opinion, the history of the documented head trauma while the Veteran was in the military is afforded significant weight in that this injury would have been during the Veteran's period of service from July 1954 to October 1957, and he had reported suffering a head trauma long before filing his current claim. 

Unfavorable evidence consists of an August 2010 VA examination report, which reflected a diagnosis of positional vertigo, NOS. The examiner stated that positional vertigo is not uncommon at the Veteran's age, and is also quite a common side effect of the drug Clonidine, which he was taking. In response to the question of whether vertigo and nausea was due to or a result of hearing aid use, secondary to sensorineural hearing loss, the examiner stated that the was unable to resolve this issue without resorting to mere speculation. 

Moreover, following a VA examination in June 2013, the VA examiner opined that the claimed condition was less likely than not proximately due to or the result of the service-connected condition. The examiner noted that the Veteran sustained a blunt head trauma in 1995, sustaining laceration of the left ear and a traumatic perforation of the TM. The examiner stated that he could not physiologically relate vertigo, nausea and vomiting, only with hearing aids in place, either to a traumatic perforation of the left ear while on active duty or to a service-connected bilateral sensorineural hearing loss. In August 2016, the August 2010 examiner provided an addendum to the earlier examination report. The examiner concluded that hearing loss and tinnitus do not cause or aggravate vertigo of any etiology. The examiner noted that the Veteran sustained a head trauma in 1995 and he began to note hearing loss and tinnitus a decade later. The examiner further noted that the Veteran began to complain of nausea and "dizzy spells," not true vertigo, when wearing hearing aids, around 2011. The examiner concluded that there was no evidence that the Veteran has vertigo etiologically related to his active service. 

It is noteworthy that the 1995 date report in the June 2013 and August 2016 medical opinions is incorrect; the records clearly suggests, and the Veteran has reported, that the head trauma was sustained in 1955. In this regard, the June 2013 and August 2016 opinions lack probative value because they were based on an inaccurate factual premise. As such they provide an inadequate basis upon which to adjudicate the claim. 

Consequently, the Board sought a VHA opinion from a Board Certified Otolaryngologist in August 2017, which was obtained in September 2017. The examiner opined that it is at least as likely as not that any vertigo, present during the appeal period, had causal origins with active service, to include as a result of a head injury in service in 1955. The examiner explained that it is possible that the Veteran incurred a fracture of the temporal bone as a result of a head injury in service in 1955 resulting in a superior semicircular canal dehiscence which was the cause of the Tullio effect years later when the hearing aids produced the loud noise to incite the vertigo. The examiner explained that the military service related hearing loss is indirectly related to dizziness in that the use of hearing aids to improve functionality provides the stimulus for the vertigo. The examiner further explained that further testing by audiology or a CT that yielded negative results of a superior semicircular canal fracture with dehiscence would not eliminate the Tullio phenomenon as the explanation of the head trauma related dizziness. This opinion is evidence favorable to the claim.

the Board finds that the preponderance of evidence supports a finding that the vertigo with nausea and vomiting is related to the in-service head injury as reported by the Veteran. The evidence shows that the Veteran has been diagnosed with vertigo, and the September 2017 expert opined that his vertigo was caused by the inservice head injury. The VHA expert's opinion is accompanied by persuasive rationale that cites to supporting factual data including the Veteran's medical history. The Board acknowledges the provider's expertise and finds the opinion to be the most complete and most probative evidence in this matter and is adequate to adjudicate the claim. As such, service connection is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 


ORDER

Service connection for vertigo with nausea and vomiting is granted. 

REMAND.

In light of the grant of service connection for the Veteran's vertigo herein, the RO must assign an initial evaluation. Thereafter, the RO should readjudicate the issue of entitlement to a TDIU. 

Accordingly, the case is REMANDED for the following action:

After implementing the Board's decision to grant service connection for vertigo and assigning a disability rating and effective date, and after accomplishing any additional notification and/or development deemed warranted for the matter of entitlement to TDIU prior to May 29, 2013, the RO must then readjudicate the claim of entitlement to TDIU. If the benefit sought is not granted in full, the AOJ should issue an appropriate SSOC supplemental statement of the case, afford the Veteran and his attorney opportunity to respond and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. § 5109B, 7112 (2012). 



____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs