﻿Citation Nr: AXXXXXXXX
Decision Date: 09/26/19 Archive Date: 09/26/19

DOCKET NO. 190416-13174
DATE: September 26, 2019

ORDER

Service connection for non-Hodgkin’s lymphoma is denied.

Service connection for left upper extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, is denied.

Service connection for right upper extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, is denied.

Service connection for left lower extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, is denied.

Service connection for right lower extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, is denied.

A total disability rating based on individual unemployability (TDIU) is denied.

FINDINGS OF FACT

1. The Veteran did not serve in the Republic of Vietnam or otherwise demonstrate actual exposure to herbicide agents during active service. Herbicide agent exposure is not presumed.

2. The Veteran’s non-Hodgkin’s lymphoma did not manifest in service or shortly thereafter and is not shown to be related to active service, to include exposure to herbicide agents.

3. The Veteran’s neuropathies of the bilateral upper and lower extremities are not caused or aggravated by a service-connected disability.

4. The Veteran’s service-connected disabilities do not render him unable to secure or follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for service connection for non-Hodgkin’s lymphoma have not been met. 38 U.S.C. §§ 1101, 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for left upper extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

3. The criteria for service connection for right upper extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

4. The criteria for service connection for left lower extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

5. The criteria for service connection for right lower extremity neuropathy, as secondary to non-Hodgkin’s lymphoma, have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.310.

6. The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.1, 4.16.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in February 2019. In April 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran served on active duty from August 1973 to December 1976. The Veteran timely appealed the February 2019 rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

1. Entitlement to service connection for non-Hodgkin’s lymphoma.

The Veteran contends his non-Hodgkin’s lymphoma is related to service. The AOJ made a favorable finding that the Veteran has a current diagnosis of non-Hodgkin’s lymphoma and that this condition is associated with herbicide agent exposure.

The question in this case is whether the Veteran had exposure to herbicide agents in service and whether a causal relationship or nexus exists between his non-Hodgkin’s lymphoma and his active service. Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated during active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). For certain chronic disorders, such as malignant tumors, service connection may be granted if the disease becomes manifest to a compensable degree within one year following separation from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a), 3.309(a).

Service connection may be granted on a presumptive basis for certain diseases (including non-Hodgkin’s lymphoma) associated with exposure to certain herbicide agents, even though there is no record of such disease during service, if they manifest to a compensable degree any time after service, in a veteran who had active military, naval, or air service for at least 90 days, during the period beginning on January 9, 1962 and ending on May 7, 1975, in the Republic of Vietnam, including the waters offshore, and other locations if the conditions of service involved duty or visitation in Vietnam. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309(e), 3.313.

In this case, the Veteran acknowledges that while he served during the Vietnam era, he never served in the Republic of Vietnam. Instead, he contends that he was exposed to herbicide agents in service while stationed at Fort Huachuca, performing his military occupational specialty (MOS) duties. He asserts that although his MOS was carpenter, he was working with the Game Management and Forestry organization during service. One of their projects was a test to use the chemicals “2,4-D and 2,4,5 with a dioxin name on the 5-gallon cans” to kill mistletoe on mesquite trees. He avers being told it was a dangerous chemical herbicide and was instructed to wear leather gloves, cloth coveralls, and goggles for eye-protection. See August 2018 Correspondence.

After careful review, the Board finds service connection is not warranted.

The Veteran’s Form DD 214 reflects that he did not serve in Vietnam. His military personnel records corroborate his statement that he was stationed at Fort Huachuca from December 1973 to December 1976. He has not otherwise reported service in the Republic of Vietnam, Korea, or Thailand. As such, exposure to herbicide agents in service cannot be presumed. 38 U.S.C. § 1116(f); 38 C.F.R. §§ 3.307 (a)(6)(iii). The Veteran is not precluded from proving actual exposure though. See Combee v. Brown, 5 Vet. App. 248 (1993); 38 C.F.R. § 3.303(d). 

The Board further finds, however, that the weight of the competent and credible evidence is against a finding that the Veteran had actual exposure to herbicide agents during service. 

The Veteran’s Form DD 214 reflects his MOS was a carpenter. A February 1975 report indicated that the Veteran performed duties at the Fish & Wildlife Section, B&G division, Facility Engineer as a clerk-typist and file clerk. He also handled the sale of hunting and fishing permits, hunter administration, and creel census. A September 1975 report show that his duties involved taking surveys of fish and game on Fort Huachuca, installing and maintaining water catchments, clearing game trails, and monitoring the hunting and fishing program. An evaluation report in September 1976 listed his MOS as forestry technician. His assigned duties involved forest management, timber stand improvement, woods road construction, tree pruning, tree marking, recreation site improvement, equipment operation, trail development, and fire control.

In November 1976, his supervisor for the past year provided a letter of recommendation. L.M.B. wrote that while stationed at Fort Huachuca, the Veteran performed carpenter work, making cabinets and other projects at the Carpenter’s shop. He also worked with the Forestry section for two years, where he pruned, planted, and marked trees, as well as did firefighting, prescribed burning, and heliport construction. The Veteran operated chainsaws, power chippers, farm tractors, loaders, dump trucks, four-wheel drive vehicles, and various other equipment involved with support of an Army installation.

In April 2018, L.M.B. submitted a letter regarding use of chemicals at Fort Huachuca. He recalled having “brushed a chemical” on some dwarf mistletoe in the late 1970s. He found no record as to what was applied, but that “it may have been 2,4, D, or 2,4,5-T.”

Although the Veteran contends he was exposed to herbicide agents while in service, his service records do not contain any evidence of herbicide agent exposure. The duties performed during service do not contain any evidence of herbicide agent use, as shown in the February 1975, September 1975, and September 1976 evaluation reports. The November 1976 letter of recommendation does not discuss test projects or use of chemicals such as herbicide agents. The Board has considered the April 2018 letter by L. B., his former supervisor; however, he clearly stated that he found no records confirming which particular chemical was applied and merely speculated about whether that chemical was in fact an herbicide agent. This evidence fails to establish that the Veteran’s service duties included the use of herbicide agents in the Veteran’s performance of his service duties so as to corroborate his assertion of actual exposure.

While the Veteran may sincerely believe that he used a dangerous chemical herbicide that was contaminated with herbicide agents, his unsupported lay assertions are not sufficient to establish actual exposure. This also applies to the assertion provided by L.M.B., who clearly states that he is unsure what chemical was used. The Board notes that a determination of whether an object or individual has been exposed or contaminated with an herbicide agent, upon mere sight alone, is not within the Veteran or L.M.B.’s ability as a lay person. The Veteran and L.M.B. have not demonstrated that they are an expert in identifying particular herbicide agents by sight, and the Veteran has not otherwise has a sound basis for knowing that he was actually exposed to it. Thus, the Board finds that the lay contentions regarding his exposure to herbicide agents are neither competent nor probative for establishing actual exposure.

The Veteran has not provided any other argument with respect to an in-service injury or event, and in-service exposure to herbicide agents is not shown. There also is no competent evidence showing non-Hodgkin’s lymphoma onset during service or is otherwise related to service.

In that regard, service treatment records are silent for diagnoses of cancer, including non-Hodgkin’s lymphoma. His September 1976 separation examination showed no abnormalities on clinical evaluation, and the evidence shows that he was not diagnosed with non-Hodgkin’s lymphoma until many years after service. 

Private treatment records show that the Veteran was initially diagnosed with non-Hodgkin’s lymphoma in May 2017. Records from Dr. D. reflect that he had a worsening of intestinal discomfort symptoms in March 2017, which led to the eventual diagnosis of non-Hodgkin’s lymphoma. A review of medical records from Dr. G.’s office corroborated the report of symptoms onset in March 2017.

In July 2018, Dr. G. provided a letter in support of the Veteran’s claim. Dr. G. reported that he reviewed and noted the circumstances and events of his military service, which included his exposure to chemicals contaminated with dioxin when he applied dioxin to mesquite trees to kill mistletoe, while he was stationed at Ft. Huachuca, serving in the military service from 1973 to 1976. He found that the Veteran has no other known risk factors that may have precipitated his current condition, and after reviewing his pertinent records, it was his opinion at a level of reasonable medical and scientific certainty (at a level more probable than not), that the Veteran’s condition was a direct result of his exposure to dioxin occurring during his military service.

In August 2018, Dr. D. submitted a letter in support of his claim. He, too, provided a positive nexus that the Veteran’s non-Hodgkin’s lymphoma was due to the exposure of dioxin in service. Dr. D. explained that his opinion was based on the Veteran’s detailed history of his exposure to dioxin during active service, as this was used as an herbicide agent, while he was stationed at Fort Huachuca.

As explained earlier, there is no probative evidence showing the Veteran had exposure to an herbicide agent during service. Therefore, the medical nexus opinions provided by Drs. D. and G. are based upon their inaccurate belief that the Veteran was exposed to herbicide agents in service and warrant no further consideration by the Board. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). There is no other competent and probative evidence showing the Veteran’s current non-Hodgkin’s lymphoma onset in service or is otherwise related to service. As a nexus between service and non-Hodgkin’s lymphoma is not established, service connection on a direct basis is not warranted.

Finally, service connection may not be presumed as there is no competent evidence to show that a malignant tumor was noted in service or manifested to a compensable degree within one year of separation from service. There also is no evidence (either lay nor medical) that the Veteran experienced continuous symptoms from the time of service to his first diagnosis of non-Hodgkin’s lymphoma in May 2017. Therefore, service connection is not warranted pursuant to 38 C.F.R. § 3.309(a) or 3.303(b).

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim, that doctrine is not applicable in the instant appeal. Service connection for non-Hodgkin’s lymphoma, to include as a result of herbicide agent exposure, is not warranted. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

2. Entitlement to service connection for left and right upper extremity neuropathy, as secondary to non-Hodgkins lymphoma; and Entitlement to service connection for left and right lower extremity neuropathy, as secondary to non-Hodgkin’s lymphoma. 

The Veteran has claimed his current neuropathies of the bilateral upper and lower extremities solely on a secondary basis. 

The RO made favorable findings that he has been diagnosed with neuropathies of the bilateral upper and lower extremities and they have been shown to be secondary to non-Hodgkin’s lymphoma.

Secondary service connection may be granted for a disability that is proximately due to or the result of a service-connected disability and includes the concept of aggravation of a nonservice-connected disability by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995).

The Board has determined that service connection for non-Hodgkin’s lymphoma is not warranted. As a result, secondary service connection is not possible for neuropathies of the bilateral upper and lower extremities. See 38 C.F.R. § 3.310; Harder v. Brown, 5 Vet. App. 183, 187-89 (1993). There are no additional service connection theories to consider, based on the Veteran’s contentions.

The preponderance of the evidence weighs against the claims of service connection for left and right upper extremity neuropathy, and left and right lower extremity neuropathy; consequently, the claims must be denied. Therefore, the benefit of the doubt rule does not apply, and service connection is not warranted. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).

3. Entitlement to a TDIU

The Veteran seeks a TDIU. The AOJ made no favorable findings under the AMA for his TDIU claim.

Total disability ratings for compensation may be assigned when a veteran is unable to secure and follow a substantially gainful occupation. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow a substantially gainful occupation as a result of service connected disability provided that if there is only one such disability, this disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

It is also the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. 38 C.F.R. § 4.16(b).

The central inquiry is “whether the Veteran’s service connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran’s level of education, special training, and previous work experience when arriving at this conclusion; factors such as age or impairment caused by non-service connected disabilities are not to be considered. 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran is service-connected for a right knee disability rated at 10 percent, and a scar associated with the right knee disability, rated at 0 percent, both effective from March 12, 2018. As a result, the Veteran does not meet the schedular criteria for a TDIU under 38 C.F.R. § 4.16(a). Consequently, the only remaining question in this case is whether there is evidence of unemployability due to the service-connected disabilities such that referral for further consideration is warranted under 38 C.F.R. § 4.16 (b). Based on the evidence, the Board does not find that referral of the Veteran’s claim is warranted.

The Veteran last worked as a chiropractor in June 2017. He indicated that he stopped working due to non-Hodgkin’s lymphoma and resulting complications. See August 2018 VA Form 21-8940. He had previously been self-employed as a chiropractor since July 1981. 

The evidence of record reflects that the Veteran would likely have some difficulty performing some aspects of his prior employment. At his February 2019 VA examination, the examiner noted that he had right knee pain daily; aggravation with prolonged sitting; stiffness, with standing over 1 hour; with walking over 1 mile; and with descending stairs. However, the examiner did not find that the Veteran was precluded from obtaining or maintaining substantially gainful employment due to his service-connected disability. The examiner who evaluated his his scar did not find for any related functional impairments. 

The Veteran has completed 4 years of college. See August 2018 VA Form 21-8940. This suggests the Veteran is capable of obtaining and performing work in a setting comparable to his college education. The evidence has not shown the Veteran’s service-connected disabilities prevent him from securing work consistent with his prior training and work history. The examiner only noted functional impairment in terms of right knee pain-not that it is a total impediment to the Veteran’s ability to function in an occupational setting that is commensurate with his prior job experience, training, and education. 

As explained above, the Board denied his claims for service connection for non-Hodgkin’s lymphoma and resulting secondary conditions. Therefore, the Board cannot consider the effect these conditions may have on his employability for TDIU purposes. As such, there is not evidence of unemployability due to a service-connected disability. Therefore, referral of the matter to the Director, Compensation Services, for consideration of TDIU under 38 C.F.R. § 4.16(b) is not warranted.

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Tang, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.